# CHARLESTON

## Hawkins v. Bare & Carter.

Submitted January 14, 1908.    Decided January 28, 1908.

1. Mandamus—*When Writ Granted.*

The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if used, it would prove unavailing, fruitless or nugatory. The court will not compel the doing of a vain thing. A mere abstract right, unattended by any substantial benefit to the party asking *mandamus*, will not be enforced by the writ. (p. 433.)

2. Statutes—*Construction—Substitute.*

A special statutory provision in one chapter of a code, substantially withdrawing, from the operation of another chapter, one of the subjects thereof, and making specific and comprehensive regulations respecting the same, apparently complete so far as they go, and radically different from those of the general provisions by which the subject had been previously governed, except such subject from the operation of the general statute to the extent to which it is governed by the special provision, and is *pro tanto* a substitute for the general statute formerly governing the subject matter. (pp. 433, 434.)

3. Taxation—*Collection—Compensation of Officers.*

Section 53 of chapter 29 of the Code of 1906, making provision for commission to assessors and sheriffs for collection of capita-

tion taxes, is the full and complete expression of the legislative will on that subject, and sheriffs are not entitled to an additional commission on such taxes, under the provisions of chapter 30 of the Code, relating to compensation for collection of taxes. (p. 434.)

Error to Circuit Court, Fayette County.

Application of E. B. Hawkins for writ of *mandamus* against B. E. Bare, assessor of the First district, and for writ of *mandamus* against S. T. Carter, assessor of the Second district. From judgments granting the writs, defendants bring error.

*Reversed and Writs Quashed.*

DILLON & NUCKOLLS, for plaintiffs in error.

POFFENBARGER, PRESIDENT:

On the 23rd day of September, 1907, the circuit court of Fayette county rendered judgments, awarding peremptory writs of *mandamus*, against S. T. Carter and B. E. Bare, assessors of said county, upon the application of E. B. Hawkins, the sheriff thereof, requiring them to pay to him the capitation taxes collected by them, respectively, in their districts, prior to the 22nd day of May, 1907, less the commission allowed them thereon. The facts stated in the alternative writs were not controverted and the defendants, relying solely upon the law applicable to the facts, demurred to the alternative writs and made no other defense.

Construing the statute upon which the demands asserted against the assessors are predicated as not vesting in the sheriff any personal pecuniary interest in the taxes involved, but only a dry, technical, fruitless legal right to receive the same and pay them into the treasury of the state, without deduction for commission or other charge, enuring to his personal benefit, the attorneys for the plaintiffs in error protest that the writs of *mandamus* cannot be invoked or had for such purpose. If the sheriff has no beneficial personal interest, in respect to the taxes, and his custody or possession thereof is not necessary to protect him from liability in respect to the same, so that the awarding of the writ would not be in any sense beneficial to him, the court

would not lend its process for the gratification of a mere whim or the settlement of a legal technicality. "The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if used, it would prove unavailing, fruitless and nugatory. The court will not compel the doing of a vain thing. A mere abstract right, unattended by any substantial benefit to the party asking *mandamus*, will not be enforced by the writ." *Hall v. Staunton*, 55 W. Va. 684. Abundant authority to sustain this proposition, in the form of decisions of other courts, is cited in the opinion in that case, and we content ourselves with a reference thereto.

Whether any duty rested upon the sheriff respecting the taxes in question or the possession thereof would confer upon him any pecuniary advantage or benefit, depends upon the interpretation of certain statutory provisions. Prior to the new tax legislation, beginning at the special session of the legislature, held in 1904, capitation taxes for state school purposes were collected by the sheriffs of the several counties. A new provision, respecting the collection thereof, was inserted in chapter 35 of the Acts of 1905, amending and re-enacting chapter 29 of the Code. By this act, that chapter was greatly changed. As changed, section 53 made it the duty of the assessors to collect the capitation taxes for state purposes as far as possible, between the first day of April and the levy terms of the county courts, which were held in July of each year, and pay the same over to the sheriffs at the end of each month as so collected, "less commission of ten per cent to which the assessors" were declared to "be entitled for collection." At the levy term, they were required to make reports to the county courts of their collections, showing the names of all persons from whom collections had been made and the names of all persons from whom collections had not been made, and thereafter they were inhibited from further collections for that year, and the sheriffs were required to collect all the delinquent capitations so reported, as well as any others which they might discover. By an act passed by the legislature on the 22nd day of February, 1907, which took effect ninety days thereafter, namely, May 22, 1907, this provision was changed so far only, as regards capitations for state school purposes, as to

require the assessors, not later than the 15th day of each month, to turn over to the auditor of the state all capitations collected by them during the previous month and not paid over. This act took effect before the alternative writs of *mandamus* were sued out in these cases. These assessors, under instructions from the state tax commissioner and the auditor, refrained from making any payments of capitation taxes to the sheriff in the months of April and May, with the view to paying them directly to the auditor as soon as the new act should come into effect. After it did come into effect, it not only authorized, but justified, payment to the auditor of taxes previously collected, for such payment placed the money in the hands of an officer of the state who was entitled to receive the same, namely, the auditor. Section 32 of chapter 30 of the Code of 1906. By paying to the auditor, the assessors did just what the sheriff would have been bound to do, had payment been made to him. The money belonged to the state, and, after collection, it was competent for the legislature to determine, at any time, who should have the custody thereof for and on behalf of the same. It is not apparent that any duty rested upon the sheriff to compel payment of the capitation taxes to him by the assessors. Provision for such assessment had originally been made in section 53 of chapter 4 of the Acts of 1904, and bond had been required of the assessors in penalties, to be fixed by the county courts, of not less than four thousand nor more than twenty thousand dollars, conditioned for the faithful performance of duty under the act, and section 32 of chapter 30, as amended by the Acts of 1904, had conferred upon the auditor of the state power to proceed against the assessors for the collection of any money due the state. The act did not expressly confer upon the sheriff power to sue the assessor. It made it the duty of the assessor to pay to him, and the auditor had power to institute proceedings for the collection of money due the state. The sheriff might not be in default as to money never received by him and for the collection of which no remedy was expressly given him by the law. But, however this may be, the money in question remained in the hands of the assessors until after the new law authorized payment of capitation taxes to the auditor, which officer

had power, under other provisions of the statute, to enforce payment thereof into the state treasury. As the statute then authorized payment to the auditor by the assessor, and the sheriff would have been bound to make payment to the same officer, if the taxes had been paid over to him, and the auditor, having authority to collect, had demanded the money of the assessors, we conclude that no duty rested upon the sheriff respecting the same.

Had he any interest therein, by way of commission or otherwise, which gave him the right to collect the same to the end that he might retain such compensation? The statutory provisions, relating to the sheriff's commission, are, as regards capitations, not as clear and explicit as they might have been made. Section 31 of chapter 30 of the Code of 1906 gives the sheriff commissions generally upon the "amount of state taxes with which he is chargeable," provided he pays the same into the state treasury within the time required by law. This would seem to give him a commission upon all the state taxes that come into his hands; but the special provision found in section 53 of chapter 29 of the Code, as amended by the Acts of 1904, 1905 and 1907, gives a commission upon capitation tax collections independently of the general provision for compensation to the sheriff. It gives the assessor a commission of ten per cent., as we have seen, to the extent of his collections, and then gives the sheriff a commission of ten per cent on the delinquent capitation taxes collected by him, but requires the assessor to pay the sheriff "one-half of all over five per cent." Just what this means, as between the sheriff and assessor, we are not called upon to determine. The question here involved is whether, in addition to this ten per cent, going to the assessor and the sheriff, the latter was entitled to charge, under the general statute, another commission on the taxes paid to him by the assessor under the acts of 1904 and 1905. If so, the total commission would have been ten per cent, plus five per cent, under certain conditions, or, four per cent, under other conditions, or, three per cent, under other conditions, of the ninety per cent paid over to the sheriff by the assessor, according to the amount paid into the treasury by the former on all accounts. The alternative writ does not assert any right to such additional commission; and the omission to claim it

might justify the court in foregoing an inquiry as to whether the plaintiff is entitled to it; but it seems quite probable that possession of the fund is sought as a basis for the assertion of a claim thereto.   An affidavit of the auditor was filed in the case, showing that the statute had been construed by his department as not allowing such commission, and that, in the settlements made by him with the plaintiff and all the other sheriffs of the state, such commission had not been allowed.   We think the special provision made with reference to commissions on capitation taxes constitutes an exception to the operation of the general provision.

In section 53 of chapter 29, the legislature has dealt specially and comprehensively with the subject of capitation taxes and the collection thereof.   If, on an examination of the provisions thereof, showing the manner and extent to which that body has treated the subject, the intention to make those provisions a complete and full expression of the legislative will concerning the same, it must be taken and regarded as furnishing the exclusive rule governing the subject, not a mere amendatory provision, engrafted upon the general law formerly governing the same subject.   A statute revising the whole subject matter of a former one, becomes, by reason of its scope and purpose, the exclusive rule or law governing the subject, and is, therefore, a substitute for the former statute, repealing such parts thereof as are inconsistent with the new act, and not a mere amendatory act, adding to, or detracting from, the former law. *State* v. *Harden*, 58 S. E. 715; *State* v. *Mines*, 38 W. Va. 125; *Herron* v. *Carson*, 26 W. Va. 62; *Diss. of Columbia* v. *Hutton*, 143 U. S. 18; *United States* v. *Claflin*, 97 U. S. 546; *Eckloff* v. *Dist. of Columbia*, 135 U. S. 240.   While the courts have usually applied this rule to statutes covering the whole subject matter of another statute or series of statutes, it must be observed that logically it applies to statutes covering an entire subject, whether that subject be the only one covered by another statute or not.   To illustrate, a statute may deal with a number of subjects, treating them all in general terms by making a provision common to all.   If, in such case, a new statute selects one of the several subjects and makes a complete special provision as to it,

the intention to substitute that provision for the general law to that extent is equally as obvious and apparent as in the case of a statute originally applicable to a single subject, set aside and displaced by a new statute dealing comprehensively with such subject.   Such statutes are generally spoken of as special provisions, constituting exceptions to the general law, rather than as substitutes therefor, but it amounts to the same thing.   If we call it an exception rather than a substitution *pro tanto*, we thereby withdraw the subject matter thereof from the operation of the general law and make the special statute the exclusive law of the subject.   "Where there is an act or provision which is general, and applicable actually or potentially to a multitude of subjects, and there is also another act or provision which is particular and applicable to one of these subjects, and inconsistent with the general act, they are not necessarily so inconsistent that both cannot stand, though contained in the same act, or though the general law were an independent enactment.   The general act would operate according to its terms on all the subjects embraced therein, except the particular one which is the subject of the special act.   That would be deemed an exception, unless the terms of the later general law manifest an intention to exclude the exception.   If the general and special provisions are in the same act, or passed on the same day in separate acts, or at the same session of the legislature, the presumption is stronger that both are intended to operate."   Lewis' Suth. Stat. Con., section 346.   Neither the intention to substitute nor the intention to create an exception from the general law depends upon inconsistency between the new or special act and the old or general act, in the sense of repugnancy in terms.   It is inconsistency in point of intention, an obvious, but unexpressed, repugnancy. It is a mere question of whether the legislature intended to make a complete law governing the subject matter.   If that be apparent, there is a substitution or an exception, as the case may be, although there is no express repeal, exception or substitution, and the two acts might be combined by making the later or special one an addition to the older or general one, and treating it as an amendment whereby a different result would be obtained.   In every case of this kind, the two courses

are open to the court. Both acts may be allowed to stand and operate together by treating the later or special one as an amendment and certain results thereby obtained; or the new or special act may be considered a substitute or exception, and the old or general statute thereby set aside either wholly or partially, and a different result so obtained; and the doubt is always resolved by the character of the new act or special provision. Though it fails to denominate itself a substitute or exception in terms, the intent to make it such is gathered from its scope and character and carried into effect.

After having examined the provisions of section 53 of chapter 29 and compared them with the general statute, relating to the sheriff's compensation for collection of taxes, found in chapter 30 of the Code, we are of opinion that the following material alterations disclose intention to make the former an exception to, or a partial substitute for, the general statute. Formerly, capitation taxes were entered upon the personal property book and thereby charged to the sheriff and collected by him along with all other taxes. This statute says the assessor shall be charged by the county court, not only with the capitation taxes collected by him, but also with all delinquents appearing in his report and all delinquents not reported by him, but afterwards ascertained or reported by the sheriff, or ascertained in any other way, and credited with all collections on that account made by the sheriff and with all delinquencies allowed by the court, and makes the sheriff liable to the assessor for all damages sustained by the latter for the failure of the former to use due diligence in ascertaining and collecting delinquent capitation taxes. Under the old law, the sheriff was the collector of capitation taxes and the assessor had nothing to do with them, except to ascertain and enter them upon the personal property books. This statute makes the assessor primarily the collector of all capitation taxes. They are all charged to him and he is responsible for the same, even for the negligence of the sheriff in respect to the collection of the delinquents. The legislature has thus withdrawn from chapter 30, by a provision inserted in chapter 29, a part of the subject matter thereof. Furthermore, the highest commission allowed by chapter 30 for the collection of capitation

taxes was five per cent. This statute doubles that commission, allowing the sheriff ten per cent for all delinquents collected by him, part of which is payable by the assessor. The assessor is allowed ten per cent for all capitations collected by him, subject to a deduction in favor of the sheriff on account of his collections of delinquents. If we say this provision is not exclusive of the general law, or does not create an exception thereto, we must adopt the unreasonable view that the legislature intended, not only to allow a new commission, more than double in amount that formerly allowed to the sheriff, but also to still allow the sheriff practically all of his old commission. It is fair to presume that the legislature did not intend to give two commissions, one to the assessor, and another to the sheriff on all capitations collected by the assessor, and a ten per cent commission to the sheriff on capitations collected by him, and still another additional commission to the sheriff under the general law.

From these conclusions it results that the judgments of the circuit court must be reversed, the demurrers to the alternative writs sustained and said writs quashed.

*Reversed and Writs Quashed.*