# CHARLESTON.

## WEST VIRGINIA NATIONAL BANK *v.* DUNKLE.

Submitted January 26, 1909.  Decided February 23, 1909.

1. TAXATION—*Discrimination—National Bank Stock—"Other Moneyed Capital"—Deduction of Debts—Statutory Provisions.*

   Before a state statute denying right in taxation to deduct debts from stock in national banks assessed with taxes but allowing such deduction from other investments can be held as in violation of section 5219, Revised Statutes of the United States, prohibiting a state from taxing such stock at a greater rate than is assessed on other moneyed capital in the hands of individual citizens, it must appear that such other moneyed capital exists and in such amount as to operate as a discrimination against such banks, and that it is of such character as to come in competition with national banks. (p. 213.)

2. MANDAMUS—*When Granted—Inefficiency of Writ.*

   A peremptory *mandamus* will not go to compel an assessor to allow a deduction of debts from an assessment of stock in a national bank, if at the hearing of the case the assessor had already delivered the personal property book to the sheriff. (p. 215.)

Petition of the West Virginia National Bank for writ of *mandamus* to B. C. Dunkle, assessor.

*Mandamus Refused.*

VINSON & THOMPSON, MOLLOHAN, McCLINTIC & MATHEWS, and HOLT & DUNCAN, for petitioner.

W. G. CONLEY, Attorney General, and T. C. TOWNSEND, for respondent.

BRANNON, JUDGE:

Certain stockholders of the West Virginia National Bank at Huntington, when giving in their personal property for taxation for 1908 to the assessor, petitioned him to allow them to deduct from their stock *bona fide* debts which they owed; but the assessor refused to do so on the ground that section 79, chapter 80, Acts of 1907, provided that no deduction shall be allowed from the valuation of shares of stock in a bank company, trust company, or national banking association on account of debts. The said bank, at the instance of said stockholders, asks of this

Court a *mandamus* to compel the assessor to allow such deduction of debts.

The chief reliance of the bank for a *mandamus* is, that the act denying such deduction violates a Federal statute, section 5219 Revised Statutes of the United States, which allows the states to tax stock in national banks provided "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." We do not pass upon the question of the validity of section 79, tested by the said Federal statute, because we do not think that the record presents a case calling upon us to pass upon that question. In the first place, it is not proven that there is any amount of moneyed capital in the assessment district to come in competition with national banks. The *mandamus nisi* awarded in this case does give certain amounts of such moneyed capital other than that invested in national banks; but the return of the assessor denies that such capital exists, and calls for proof thereof, and no proof of the existence of such capital or its amount is furnished. Again, there must be proof, even if there be such capital, that it comes in competition with the business of national banks; for all such capital does not do so. The object of the Federal statute is to prevent injury to the national bank stock by discriminating against it in favor of money otherwise invested, since if national bank stock is taxed and other moneyed capital is not taxed, people would not invest in the stock of national banks and their efficiency would be injured. It must be made to appear that such moneyed capital does exist and that from it debts may be deducted. As just stated there is no proof even of that indispensable fact. Moreover, it is not enough to show that such untaxed moneyed capital exists, but it must be shown that it "is so large and substantial as to amount to an illegal discrimination against national bank shareholders, in violation of the provision of Rev. Stat., sec. 5219." *First Nat. Bank* v. *Ayers,* 160 U. S. 660. In that case the court said, page 667, that there was no proof that the moneyed capital of Kansas from which debts might be deducted, as compared with moneyed capital in shares of national banks, "was so large and substantial as to amount to an illegal discrimination against national bank shareholders." And the court said that it could not take judicial notice that such was the fact. *Boyer* v. *Boyer,* 113 U. S. 689,

says that untaxed ·capital must be "a very material part, rela-
tively, of other moneyed capital in the hands of individual citi-
zens." As· I have said there is no proof in this case that any
such moneyed capital exists in Cabell county coming in competi-
tion with national banks or the amount thereof. Moreover, for
a state assessment to be in violation of the said Federal statute
it must be made to appear that such other moneyed capital comes
in competition with that of national banks. It must be made
to appear that it is composed of investments of that character
which will enable us to see and say that it does compete with
the capital of national banks; for it is well settled that if it
be in railroad investments or insurance investments, in other
words, in any investments that do not come in competition with
national banks, the state law allowing deduction of debts there-
from does not violate said Federal statute. In *Nat. Bank of
Wellington* v. *Chapman,* 173 U. S. 205, the court said that it
could not for proof look to the state auditor's report and further
said: "However, if we were to look at this report we should
then see that the total credits do not show what portion of those
credits consist of moneyed capital in the hands of individuals
which in fact enters into competition for business with national
banks. It is only that kind of moneyed capital which this court,
in its decisions above cited, holds is moneyed capital within the
meaning of the Act of Congress." In *Aberdeen Bank* v. *Chehalis,*
166 U. S. 440, the court held that, "Money invested in corpora-
tions or in individual enterprises that carry on the business of
railroads, of manufacturing enterprises, mining investments and
investments in mortgages, does not come into competition with
the business of national banks, and is therefore not within the
meaning of the provision of Rev. Stat., sec. 5219, forbidding state
taxation of its shares at a greater rate than is assessed upon other
moneyed capital in the hands of citizens of the State." In *Com-
mercial Bank* v. *Chambers,* 182 U. S. 556, the court referred to
the cases of *First Nat. Bank* v. *Ayers,* and *First Nat. Bank of
Aberdeen* v. *Chehalis County,* and said: "Those decisions held
that the term 'moneyed capital,' as employed in section 5219
of the Revised Statutes, forbidding greater taxation of share-
holders of national banks than is imposed on other moneyed
capital, does not include capital which does not come into com-
petition with the business of national banks, and that it must be

satisfactorily made to appear by proof that the moneyed capital claimed to be given an unjust advantage is of the character just stated. *First National Bank of Wellington* v. *Chapman,* 173 U. S. 205, 219, and cases cited." In our case we are hardly able to say that the alternative writ alleges that the untaxed moneyed capital comes in competition with the plaintiff national bank. The allegation of that fact is not specific or clear; but treating it as an allegation of such competition, it is denied by the return and there is not proof of the fact that such moneyed capital does compete with said bank. Therefore, under those Federal cases the plaintiff's case fails for want of proof of the particular fact of competition. As I said above there is indeed no proof that there is any such exempted moneyed capital, and if there is no such capital there can be no such competition; but in addition, even if we could say that there is any such capital, there is no proof that any of it, or any material part of it, comes in such competition. Therefore, the plaintiff has not made a case giving it the benefit of the said national law. Gray on Limitations of Taxing Power, sec. 806, says that "other moneyed capital under the Federal statute 'means' only capital which comes into business competition with national banking capital and does not mean every form of monetary investment," and cites many authorities.

Another reason exists for refusal of the *mandamus*. It is this. The *mandamus nisi* was served upon assessor Dunkle on the 22nd day of August, 1908, and was returnable the 2nd day of September, 1908. We heard the case on the 26th day of January, 1909. Our Code, chapter 29, section 119, requires the assessor to deliver to the sheriff for collection of the taxes the personal property books not later than the first of September and to deliver to the auditor a copy of the books not later than the first day of October. If we go upon presumption, the tax book was delivered to the sheriff for collection of the taxes not later than the first of September. The return if it be evidence states that delivery of the tax book was made to the sheriff on the 20th day of September. So, when we heard this case the assessor had parted with the possession of the tax book. He was powerless to do anything to make any changes in it. His function as to it had ceased. Our Code, chapter 29, section 128, provides that "After the copies of the land or personal property books shall

have been verified and delivered, no alteration shall be made in them or either of them, affecting the taxes of that year." We held in *State* v. *County Court,* 47 W. Va. 672, that, *"Mandamus* will not go if it would prove fruitless or impossible of performance or beyond the power or means of the party to whom it is directed to perform its command." So it is held in *Hall* v. *Staunton,* 55 W. Va. 684. Such appears to be the general rule. 9 Va. & W. Va. Encyclopedic Digest 518; 26 Cyc. 147. *"Mandamus* will not go to a board of supervisors requiring them to make corrections in the assessment of taxes in their county, after the assessments have been completed and warrants have been issued to the receiver of taxes and the matter has passed beyond the control of the supervisors, since the writ would be nugatory if issued, and the rule is well established that *mandamus* will never issue when it would be nugatory from want of power in the respondents to perform the act required." High's Extra. L. Remedies, sec. 140. To the same effect Spelling on Injunctions and Extra. Rem., sec. 1521. In *Gather* v. *Tax Collector,* 40 La. Ann. 362, it is held that, *"Mandamus* will not go to the Board of Commissioners after the levy of the tax has been completed, the tax has been extended on the assessment roll, and the roll placed in the possession of the tax collector for collection, because it would be nugatory for want of power in such board to make the correction that is required, it being *functus officio.* * * * * Once a tax is *in esse,* the tax roll placed in the hands of the tax collector, and the levying and assessing officer have become *functus officio,* the legality of such tax cannot be tested with the collector alone." I find in *People* v. *Supervisor,* 12 Barbour 217, this: "It must also appear that the defendant yet has it in his power to perform the duty required of him. For the court will refuse the writ if it be manifest that it would be vain and fruitless." In *State* v. *Perrine,* 34 N. J. L. 254, it is held that a writ of *mandamus* will not be allowed unless the act to be done is legally possible before the writ issued. In *Stacy* v. *Hammon,* 96 Ga. 125, it is held that when at the time of the hearing of a *mandamus* the time had passed within which the official duty could be performed, no *mandamus* could issue, as it cannot be granted when it is manifest that for any cause the writ would be nugatory or fruitless. If this *mandamus* should issue it would require the assessor to change the tax book and violate the statute

above cited. *Mandamus* will not go to enforce an officer to violate the law. Whether the assessor did right or wrong in delivering the book to the sheriff pending this writ, he did so, and thus became powerless to act. The *mandamus nisi* had no effect as an injunction or *supersedeas* to prevent the assessor from delivering the book without an order to stay him from so doing contained in the *mandamus nisi,* as was the case in *Alderson* v. *Commissioner,* 31 W. Va. 633. I would very much question whether any such staying order should be made operating to stay indefinitely the delivery of the tax books by the assessor, and thus it might be stop the wheels of state and county government. I doubt whether this remedy of *mandamus* lies in such a case as this, especially a few days before the time for the delivery of the books to the sheriff. It seems to me that the party must resort to some other remedy.

There is another reason for denying the *mandamus,* and that is under the well known rule that it will not lie where there is other adequate remedy. Section 129, chapter 29 of the Code, gives any person aggrieved by any entry on the tax books right to go before the county court and ask a correction of his assessment, and in case of refusal to go by appeal to the circuit court. If it be said that this is not an adequate remedy for want of an appeal from the circuit court to the Supreme Court, I would reply that the action of the county and circuit courts in such matters, being of administrative or taxing jurisdiction, not judicial, would not be *res judicata* or preclude other appropriate remedy.

Under these rules it is unnecessary to say whether the act of the Legislature forbidding the deduction of debts from national bank stock is in violation of the state Constitution providing that taxation shall be equal and uniform and all property shall be taxed in proportion to its value. The rule is that courts will not pass upon the constitutionality or validity of a legislative act when the case can be decided on other grounds.

For these reasons we refuse the peremptory *mandamus.*

*Mandamus Refused.*