HARRY R. TAYLOR, *Relator v.* BOARD OF CANVASSERS OF
MINERAL COUNTY *et al., Respondents.*

(No. 8533)

Submitted September 1, 1937. Decided November 2, 1937.

*Harry K. Drane,* for relator.

*Arthur Arnold, W. Elliott Nefflen, Lester Reynolds* and *Charles Ritchie,* for respondents.

RILEY, JUDGE:

This is a proceeding in mandamus to compel respondents, Clyde Boner, president, and Thomas W. Cannon and J. Frank Junkins, commissioners of the county court of Mineral County, and as such constituting the board of canvassers of said county, to reconvene as such board and to correct certain alleged errors in the official canvass of the vote, cast November 3, 1936, for the office of prosecuting attorney, and to declare relator, Harry R. Taylor, duly elected to said office.

On the morning after the election, relator, upon the face of the unofficial tabulation of returns from the twenty-four precincts of the county, had a majority of ninety-nine votes over his opponent, Vernon E. Rankin. The totals from New Creek No. 5, as included in said tabulation, for prosecuting attorney, were, Taylor 332 and Rankin 451. This was in accord with the certificate of result then in the hands of the clerk of the county court. Counsel for Rankin, upon noticing that the total vote cast for prosecuting attorney was approximately one hundred less than for other county offices, and that Rankin was trailing other candidates of his own party by a like number, called the matter to the clerk's attention; and, thereupon, the latter went to an unlocked canvass bag, which contained the ballots unsealed and other records from New Creek No. 5, and took therefrom four additional certificates of result, each being properly authenticated, as required by law. Three of these certificates gave Rankin 551 and the fourth 451. A sixth certificate, which had been posted at the voting precinct, carried Rankin's vote as 451. Rankin's vote, according to both tally sheets, was 551, the totals appearing in both words and figures.

The board met November 9th to canvass the returns, and due to the self-contradiction of the several certificates of result, as noted above, directed that the records of New Creek No. 5 be placed initially before it. At that time the relator moved that the board look to and recount the ballots of said precinct as a part of the canvass, in which motion Rankin later joined. The canvass of this precinct, in so far as it related to the office of prosecuting attorney, was discontinued until after the completion of the canvass of the other precincts. Although Taylor claims to have made a timely withdrawal of his request for a recount of New Creek No. 5, the board proceeded to recount the same, the result being Rankin 547 and Taylor 324. Upon the completion of the canvass of the twenty-four precincts, Rankin had a majority of five over the relator.

Looking at the case from the angle most favorable to relator, i.e., that his motion was withdrawn and that the board proceeded to count on its own motion, his right to the writ depends upon (1) the rejection of the entire vote of New Creek No. 5, or (2) the acceptance of the certificate of result in the hands of the clerk on the morning following the election as conclusive on the number of votes received by each of the candidates for office of prosecuting attorney, and controlling on the canvass. In either event he would have a substantial majority.

No showing has been made which would warrant throwing out the precinct *in toto*. It is, however, quite apparent from the evidence before us that the ballots of precinct No. 5 were not preserved as required by law— not sealed—and therefore have lost their integrity. The ballots cast at an election lose their integrity and cannot be regarded as the primary and highest evidence of the result of the election, where they have been turned over to the county clerk's office without being sealed as required by Code, 3-5-32. Upon canvass, the statutory test is the opportunity to tamper with the ballots and not actual evidence of tampering. *State ex rel. Gabbert* v. *Robinson et al.*, 88 W. Va. 708, 107 S. E. 763; *State ex rel. Johnson* v. *Given et al.*, 102 W. Va. 703, 710, 136 S. E.

772; *Hatfield* v. *Board of Canvassers et al.*, 98 W. Va. 41, 45, 126 S. E. 708; *State ex rel. Hatfield* v. *Farley et al.*, 97 W. Va. 695, 698, 126 S. E. 413. In other words, the ballots can no longer be considered as primary evidence of the vote in said precinct.

Is the certificate of result which was in the hands of the county clerk on the morning after the election a verity? Relator says that it is. If so, it is *prima facie* evidence of the result at New Creek No. 5, and must be accepted as such on a canvass. *McKinzie* v. *Hatfield*, 77 W. Va. 508, 87 S. E. 879. Relator contends that if the statute had been followed in every particular, i.e., four certificates prepared and disposed in the manner prescribed by law (Code 1931, 3-5-32, 3-4-18) that the certificate of result required to be delivered under seal to the clerk of the county court would necessarily have been controlling on the canvass, and by the same token that the certificate found in the clerk's hands on the morning after the election should be accorded the same consideration. But the variation in the vote for Rankin on the several certificates, having been discovered prior to the canvass, was called to the attention of the board. It could not ignore the self-contradictory entries in the certificates. And being compelled to look elsewhere, turned to the ballots.

The ballots from New Creek No. 5 having lost their integrity, the question is raised whether the vote of the entire precinct should be thrown out, or whether the tally sheets may be looked to as evidence of the vote, in lieu of the ballots and the certificates of result. Our general election law provides for the keeping and return of tally sheets of elections. Code 1931, 3-5-32. Tally markings being made concurrently with the count of the vote are, in fact, original and primary evidence of the result of the count, the totals of the certificates of result being compiled secondarily. Our court, in view of the statute providing for the preservation of tally sheets, has recognized the evidentiary value of such records, in the absence of tampering, in a case where neither the certificate of result nor the ballots could be looked to. *Hatfield* v. *Board*

*of Canvassers, supra.* In case the certificates of result of an election are successfully challenged, the ballots are the primary and highest evidence of the result, provided they have not lost their integrity. Where, however, the certificates of result are contradictory, and the ballots have lost their integrity, the tally sheets may be looked to upon a canvass of the returns of an election to determine the vote for a particular candidate. In fact, under the circumstances of the instant case, it became the duty of the board to look to the tally sheets. *Sanders* v. *Board of Canvassers,* 79 W. Va. 303, 90 S. E. 865. The tally sheets are sought to be discredited by the fact that Taylor's vote on one is in words and figures, "Three Hundred and Thirty-Two", "332", and on the other, "Three Hundred and Two", "332". The actual count of the tallies on both sheets is three hundred and thirty-two. We see no merit in this contention.

Although it is true that fewer names appear on each of the poll books than the total ballots cast, it appears from the record before us that the discrepancy was due to omissions on each book, the names of a very small number of voters in each book not appearing on the other. This discrepancy is not of sufficient importance to justify throwing out the votes of the precinct *in toto.*

Inasmuch as the record fails to disclose that the relator's position would be altered if the board of canvassers should be directed to ignore the ballots and to look to the tally sheets, mandamus will not lie for that purpose. A writ of mandamus will never be granted where, if issued, it would prove fruitless and unavailing. *State ex rel. Johnson* v. *Given, supra,* p. 705 of 102 W. Va.; *Ice* v. *Board of Canvassers,* 64 W. Va. 544, 63 S. E. 331; *Pardue* v. *County Court,* 105 W. Va. 235, 141 S. E. 874.

Being of the opinion that the relator has failed to establish his right to the writ, the same is therefore denied.

*Writ denied.*