STATE *ex rel.* ROBERT R. NELSON, *et al.*

*v.*

WILLIAM S. RITCHIE, JR., *Commissioner*
*of the Department of Highways of West Virginia*

(No. 12999)

Submitted October 20, 1970.    Decided December 8, 1970.

*L. D. Egnor, Jr.,* for relators.

*Anthony G. Halkias,* Legal Division, Department of High-
ways, for respondent.

HAYMOND, JUDGE:

In this original mandamus proceeding instituted in this Court in July 1970, the petitioners, Robert R. Nelson, Paul C. Pancake, Jr., Freda N. Paul, Hugh A. Kincaid, David J. Lockwood, Dennis White, C. M. Polan, Jr., and Michael R. Prestera, citizens, residents and taxpayers of Huntington, Cabell County, West Virginia, only one of whom, David J. Lockwood, is a holder of any of the Huntington Bridge Revenue Bonds involved in this proceeding, seek a writ to require Honorable Arch A. Moore, Jr., Governor of West Virginia, and Honorable William S. Ritchie, Jr., Commissioner of the Department of Highways of West Virginia, to establish a construction site for the Huntington East End Bridge at Lewis Hollow, which is alleged to be desired by a great majority of the citizens of Huntington, or in the alternative that this Court interpret the provision of the bond resolution and official statement involved in this proceeding to establish the area within which the department of highways may build such bridge and to require the defendants to commence immediately the design and construction of such bridge within such designated area.

Upon the amended petition and its exhibits filed September 2, 1970, this Court awarded a rule against the defendant Ritchie, returnable September 29, 1970, but refused to issue a rule against Governor Moore. By agreement of the parties and with the consent of this Court this proceeding was continued from September 29, 1970, to October 20, 1970, at which time it was submitted for decision upon the amended petition and its exhibits, the rule previously awarded, the answer of the defendant Ritchie, Commissioner of the Department of Highways of West Virginia, herein sometimes referred to as the defendant or commissioner, and the exhibits with the answer, the replication of the petitioners to the answer, which replication was subsequently withdrawn, and the briefs and oral arguments of the attorneys for the respective parties.

The material facts are not disputed and the questions presented for decision are questions of law.

Under the provisions of Section 17, Article 17, Chapter 17, Code, 1931, as amended, the State Road Commissioner of West Virginia was empowered to construct toll bridges from the proceeds of bridge bonds and to purchase lands and property necessary for the construction of such bridges and, by Section 19 of the same article and chapter, to pay the cost of such bridges by the issuance of bridge revenue bonds. By virtue of Section 23b, Article 17, Chapter 17, Code, 1931, as amended, the commissioner was authorized and empowered to combine any two or more bridges, including existing bridges and bridges to be constructed or acquired, and to pledge all or any part of the revenue derived from such combined bridges to the payment of interest and sinking fund requirements of any bonds issued in respect to such combined bridges or either of them.

By Section 1, Article 2A, Chapter 17, Code, 1931, as amended by Chapter 68, Acts of the Legislature of West Virginia, Regular Session, 1970, effective February 7, 1970, the office of State Road Commissioner was continued and designated as West Virginia Department of Highways and all the duties and responsibilities of the State Road Commissioner and the powers exercised by him were transferred to the West Virginia Department of Highways and such duties and responsibilities are to be performed by the Department of Highways through the recently created West Virginia Commissioner of Highways who is designated as the chief executive officer of that department.

On May 6, 1965, the State Road Commission of West Virginia adopted a bond resolution which authorized the issuance and sale of $16,600,000.00 in Huntington Bridge Revenue Bonds to finance the cost of the combined project of constructing improvements to the existing Huntington-Chesapeake Bridge, known as the 6th Street Bridge, of constructing a new bridge to be located across the Ohio River from the vicinity of 17th Street in Huntington, West Virginia, to U. S. Route 52 in Ohio, and of constructing and establishing a second new bridge referred to as the East End Bridge, which is involved in this proceeding, to be located in the vicinity of 24th Street to 31st Street, in Huntington, West Virginia, and

across the Ohio River to Ohio State Route 7, in the vicinity of Proctorville, Ohio, together with the necessary approaches and appurtenances and the facilities and equipment necessary for the operation of such bridge. The bonds were sold on May 18, 1965, and subsequently the 17th Street Bridge was constructed as provided in the resolution and the official statement issued by the State Road Commission of West Virginia.

Article 1, Section 1.03 of the bond resolution expressly provided that the resolution constituted a contract between the State Road Commission of West Virginia and the bondholders. The official statement designated three proposed locations for the East End Bridge and these proposed locations are 24th Street, 29th Street and 31st Street, in Huntington, West Virginia. The detailed financial data in the official statement is predicated upon the highest estimated construction costs of a bridge between 24th Street and 31st Street, and bridge traffic and revenue estimates and the proposed toll schedule and toll revenues are based upon the location of the East End Bridge at 24th Street, 29th Street or 31st Street. These alternate locations were determined by traffic reports made by Wilbur Smith and Associates, dated June 1961 and March 1965.

On September 17, 1965, the State Road Commission of West Virginia entered into a contract with a consulting engineering firm for the preparation of a preliminary engineering report to determine the most feasible and economic location of a bridge in the vicinity of 24th Street, 29th Street, or 31st Street, and on September 26, 1966, a preliminary engineering report by the firm for the proposed East End Bridge at 24th Street, 25th Street, 29th Street or 30th Street was received by the commission.

On January 3, 1968, the State Road Commission of West Virginia entered into an engineering agreement with the same firm for the study, design and preparation of rights of way and construction plans for the East End Bridge in the vicinity of 30th Street in Huntington, West Virginia. Subsequently during 1968 and while the design work was in progress for the East End Bridge at the proposed location in the vicinity of

30th Street, the predecessor in office of the defendant received various objections from certain individuals and groups in Huntington concerning the proposed location of the East End Bridge which caused considerable delay inasmuch as the then commissioner undertook to review and consider such objections. Many of the objecting individuals and groups requested that the bridge be located at Lewis Hollow which is 2.2 miles east of 31st Street and outside the limits of the City of Huntington and the area authorized by the bond resolution.

Application was made to the Department of Transportation of the United States Coast Guard for a permit for the location of the East End Bridge within the authorized area and by letter dated October 29, 1969, the United States Coast Guard refused the application for the permit for the stated reasons that certain letters and information available to it indicated that there was a doubt as to the ultimate location of the bridge.

The first objection to the location of the bridge in the vicinity of 24th Street to 31st Street consisted of a resolution from the Huntington Area Transportation Advisory Committee, dated April 9, 1968, which contained a request that the East End Bridge be located east of the city limits of the City of Huntington to conform with, or be made a part of, the interregional belt system; that it be redesigned for four lanes of traffic; and that steps be taken to eliminate all tolls for the use of the bridge.

As a result of these objections and requests which were submitted and joined in by some of the petitioners and other individuals associated with them, the defendant responded to the requests by informing the objectors that the bond resolution provided that no material modification or amendment of the resolution may be made without the consent of the holders of two-thirds or more of the principal amount of the bonds outstanding and in order to satisfy the requests of the objectors, including some of the petitioners, the defendant, through the office of the Governor, undertook to obtain the consent of the bondholders to a revised location of the East End Bridge. After considerable delay the holders of only $4,225,-000.00 of the principal of the outstanding bonds, which is

considerably less than the requisite consent of two-thirds of the bondholders, agreed to any change in the location of the bridge.

The foregoing facts are set forth in the answer of the defendant and as the replication to that answer has been withdrawn, the facts, not being denied, must be considered as true for the purposes of this proceeding. See *American Industrial Leasing Company v. McElroy*, 152 W.Va. 587, 165 S.E.2d 617.

The defendant alleges in his answer that though there has been delay in the selection of a definite site for the location of the bridge and in the commencement of its construction which has been caused, or contributed to in substantial measure, by the action of the petitioners in endeavoring to change the location of the bridge from the authorized area to the proposed location of Lewis Hollow which is 2.2 miles from the authorized area and is outside the city of Huntington, the defendant denies that he has refused to locate and begin the construction of the bridge but on the contrary alleges that he has made every effort to ascertain or finalize a location for the bridge in order that it may be designed and constructed as soon as possible in accordance with the bond resolution. He asserts that he is doing everything within his powers and duties as commissioner of the West Virginia Department of Highways to have the East End Bridge constructed as soon as possible, that he has never refused to construct the bridge but "has at all times performed acts which establish that he will have said bridge constructed." In view of the foregoing undisputed facts it can not be said that the delay upon the part of the defendant and his predecessor has been an unreasonable delay.

The official statement of the commission relating to the bonds states that it is the objective of the commission to be able to let construction contracts and commence construction of the East End Bridge as soon as possible after construction has been completed on the 17th Street Bridge, which was estimated to be January 1, 1968, and that the first construction contracts for the East End Bridge were expected to be let in

the spring of 1968, with completion scheduled on or before July 1, 1970. As indicated, this is an estimated schedule as to construction contracts and completion but it is not a definite commitment. The defendant contends that the delay produced by the petitioners and others has been a factor which has contributed to the delay in the scheduled construction of the bridge.

The bonds are dated January 1, 1965, and mature between January 1, 1977 and January 1, 2005. There has been no default in the payment of any bond because the maturity of the first bond is January 1, 1977. Apparently the interest which first became payable on July 1, 1965, has been paid from the income of the other bridges as there is no allegation in the amended petition that there has been any default in any payment of interest.

The defendant contends that the writ of mandamus should be refused in this proceeding for these reasons: The defendant has not refused to construct the East End Bridge according to the requirements of the bond resolution; the petitioners are barred by the doctrine of estoppel from the relief which they seek; they are not entitled to a writ of mandamus to compel the defendant to perform a discretionary duty as to the location of the bridge or to compel the defendant to undo what has been done or to do a different thing; a writ will not issue to compel an act which the defendant has already begun and intends to complete; the petitioners do not have a clear legal right to the relief which they seek; a writ will not be granted when it appears that it would be ineffectual or is unnecessary; the petitioners have not demanded the construction of the bridge in accordance with the bond resolution; they are barred by the doctrine of laches from the relief which they seek; and they have another adequate remedy by way of a declaratory judgment proceeding.

From the foregoing undisputed facts it is evident that though the defendant and his predecessor in office have delayed the selection of the site and the construction of the East End Bridge, the action of the petitioners and those associated with them in endeavoring to obtain a change of location from

the authorized area to Lewis Hollow outside the city of Huntington has contributed substantially to such delay and that, notwithstanding the delay, the defendant has never refused to locate the bridge within the authorized area or to proceed with the construction of the bridge. On the contrary it appears from the undisputed facts that the defendant and his predecessor in office have caused the necessary engineering surveys and reports to be completed, that such preliminary reports are a necessary step in the construction of the bridge, and that the defendant intends to complete the bridge and states in his answer that he will do so as soon as possible. In this situation it is evident that a writ of mandamus, under the facts disclosed by the pleadings in this proceeding, is clearly unnecessary.

In 55 C.J.S., *Mandamus,* Section 10b, the text contains these statements: "As a rule, mandamus will not issue if the duty sought to be enforced has already been done or is being performed. The office of the writ is only to compel action by the unwilling, and if the act has already been done the writ would be fruitless. Also the writ will not lie to compel performance of an act which respondent shows a willingness to perform without coercion." In *State ex rel. Hall v. County Court of Mercer County,* 100 W.Va. 11, 129 S.E. 712, this Court held in point 2 of the syllabus that "Mandamus will not issue to compel a party to perform an act which he has already begun to do, and it is apparent that he will in good faith perform." In *Monongalia Improvement Company v. Morris,* 106 W.Va. 243, 145 S.E. 387, the opinion contains this quotation from 38 C.J. 553: "The office of the writ (of mandamus) being to compel action by the unwilling, it will not issue if the duty sought to be enforced has already been done or is being performed. If the act is already being done the writ would be fruitless."

A writ of mandamus will not be issued to compel the performance of an act which the defendant has not refused to perform. See *State ex rel. The Beckley Newspapers Corporation v. Hunter,* 127 W.Va. 738, 34 S.E.2d 468; *Hall v. Staunton,* 55 W.Va. 684, 47 S.E. 265.

It is also well settled by many decisions of this Court that a writ of mandamus will not be issued in any case when it is unnecessary or when, if used, it would prove unavailing, fruitless or nugatory. *State ex rel. Archer v. The County Court of Wirt County*, 150 W.Va. 260, 144 S.E.2d 791; *Delardas v. Morgantown Water Commission*, 148 W.Va. 776, 137 S.E.2d 426; *Gerwig v. The Baltimore and Ohio Railroad Company*, 141 W.Va. 139, 89 S.E.2d 217; *Brannon v. Perkey*, 127 W.Va. 103, 31 S.E.2d 898, 158 A.L.R. 631; *State ex rel. The City of Huntington v. Heffley*, 127 W.Va. 254, 32 S.E.2d 456; *Taylor v. Board of Canvassers of Mineral County*, 119 W.Va. 378, 193 S.E. 575; *Cantrell v. Board of Education of Lee District*, 107 W.Va. 362, 148 S.E. 320; *Pardue v. County Court of Lincoln County*, 105 W.Va. 235, 141 S.E. 874; *State ex rel. Johnson v. Given*, 102 W.Va. 703, 136 S.E. 772; *State ex rel. Ryan v. Miller*, 82 W.Va. 490, 96 S.E. 791; *West Virginia National Bank v. Dunkle*, 65 W.Va. 210, 64 S.E. 531; *Hawkins v. Bare*, 63 W.Va. 431, 60 S.E. 391; *Hall v. Staunton*, 55 W.Va. 684, 47 S.E. 265; *State ex rel. Matheny v. County Court of Wyoming County*, 47 W.Va. 672, 35 S.E. 959.

This Court has uniformly held in many cases that he who seeks relief by mandamus must show a clear legal right to the remedy. *State ex rel. Lynn v. Pryor*, 154 W.Va. 555, 177 S.E.2d 33; *State ex rel. Browning v. Haden*, 154 W.Va. 298, 175 S.E. 2d 197; *State ex rel. Horne v. Adams*, 154 W.Va. 269, 175 S.E.2d 193; *State ex rel. Withers v. The Board of Education of Mason County*, 153 W.Va. 867, 172 S.E.2d 796; *State ex rel. Kucera v. The City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367; *American Industrial Leasing Company v. McElroy*, 152 W.Va. 587, 165 S.E.2d 617; *State ex rel. Daily Gazette Company v. Bailey*, 152 W.Va. 521, 164 S.E.2d 414; *State ex rel. Waller Chemicals, Inc. v. McNutt*, 152 W.Va. 186, 160 S.E.2d 170; *State ex rel. Hercules Tire and Rubber Supply Company of West Virginia v. Gore*, 152 W.Va. 76, 159 S.E.2d 801; *State ex rel. Lynch v. State Road Commission of West Virginia*, 151 W.Va. 858, 157 S.E.2d 329; *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479, 153 S.E.2d 284, and the many cases cited in the opinion in that case.

As it is clear from the undisputed facts set forth in the pleadings that the petitioners have not satisfied the requirement of showing a clear legal right to the remedy which they seek in this proceeding, the writ of mandamus, as prayed for in the amended petition, must be, and it is denied.

In denying relief this Court does so solely for the reason that the proceeding now before this Court does not warrant the issuance of a writ of mandamus. It should be emphasized, however, that the defendant is under a duty to the public to construct the East End Bridge in accordance with the requirements of the bond resolution with all deliberate speed and without unreasonable delay. Unless he proceeds promptly and without unreasonable delay to discharge that duty, he will be subject, in a mandamus proceeding, to a writ to compel him to select a site for the East End Bridge within the authorized area and to begin the construction of the bridge and to proceed with such construction until the bridge is completed.

*Writy refused.*