# CHARLESTON.

STATE *ex rel.* GRANT P. HALL *et al. v.* COUNTY COURT OF
MERCER COUNTY *et al.*

(No. 5525)

Submitted September 8, 1925. Decided September 29, 1925.

1. CONSTITUTIONAL LAW—*Constitutionality of Statute Under Which Court Acted in Issuing Bonds, or Validity of Bonds, Will Not be Passed on Unless Bondholders Are Made Parties or Have Their Day in Court.*

   In a mandamus proceeding to compel a county court, which has issued, sold and delivered to purchasers refunding bonds under the provisions of Chap. 46, Acts 1925, to cancel all its refunding orders, recall the bonds and cancel them, on the ground that they are invalid as having been issued under an unconstitutional act, and as creating a debt without the sanction of the voters as provided by the constitution, this Court will not consider and pass upon the constitutionality of the statute nor upon the validity of the bonds, unless the bondholders are made parties, or have their day in court. (p. 16.)

   (Mandamus, 38 C. J. § 556).

2. MANDAMUS—*Mandamus Will Not Issue to Compel Party to Perform Act Which he Has Already Begun to do, and Will in Good Faith Perform.*

   Mandamus will not issue to compel a party to perform an act which he has already begun to do, and it is apparent that he will in good faith perform. (p. 17.)

   (Mandamus, 38 C. J. § 24).

   ___
   NOTE:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi.

Original proceeding by the State, on the relation of Grant P. Hall, State Tax Commissioner, and a taxpayer of Mercer County, for mandamus to be directed to the County Court of Mercer County and others.

*Writ refused.*

*John T. Simms,* for relators.

*Walter V. Ross,* Prosecuting Attorney, and *A. J. Lubliner,* Assistant Prosecuting Attorney, and *Poffenbarger, Blue & Dayton,* and *Houston G. Young,* for respondents.

LIVELY, PRESIDENT:

The State Tax Commissioner and a taxpayer of Mercer County pray the court to require the County Court of Mercer County, by the extraordinary writ of mandamus to rescind all of its orders, acts and contracts relating to the refunding of certain road bonds of said county aggregating $815,000, issued and sold in the years 1914 and 1915, and to recall from the City Bank of New York City all of the refunding bonds placed there by it under a contract of sale of the bonds to A. C. Allyn and Co. of Chicago, Illinois; to cancel said refunding bonds; and to require it to apply the sinking fund in its hands to the discharge of the original bonds, the sinking fund for that purpose now amounting to approximately $300,000.00 (the exact amount as shown by the return being $294,417.37 as of the 4th day of Sept., 1925).

Demurrer to the petition and motion to quash the alternative writ were interposed by the county court, and return made to the writ.

From the.pleadings it appears that the county court legally issued and sold road bonds aggregating $500,000, dated April 15, 1914, maturing April 15, 1944, with privilege of retiring the entire issue after 10 years; and likewise issued and sold road bonds dated July 1, 1915, in the aggregate sum of $350,000, maturing on July 1, 1945; interest at 5% on both issues payable semi-annually. In these issues a sinking fund was provided for by taxation, all of which fund after 10 years from the date of the bonds was to be applied to the payment of the bonds, beginning with bond No. 1, and then whenever the sinking fund amounted to $5,000 it was to be applied in like manner. On July 1, 1925, $35,000 of the first issue was paid off, leaving $815,000. Later $15,000 of the sinking fund was set aside to discharge that amount of bonds, but which sum has not been used, the bonds never having been presented for redemption. The exact amount in the sinking fund as of September 4, 1925, including the $15,000 so set aside, is $294,417.37.

On June 27, 1925, the bonds of the two issues outstanding amounted to $815,000, with a sinking fund on hand applicable

to their partial discharge of approximately $294,000. On that date the county court, acting under chap. 46, acts 1925, an act authorizing counties, municipalities, &c., to issue bonds for the purpose of refunding indebtedness evidenced by bonds, entered an order to issue and sell to A. C. Allyn & Co. refunding bonds to pay off and discharge the original bonds to the amount of $800,000, the new bonds to be dated July 1, 1925, drawing 4¾ per cent. interest, payable semi-annually, the last batch maturing and to be paid off on July 1, 1945. These refunding bonds were duly issued and placed with the National City Bank of New York City to be simultaneously exchanged for like amount of the old bonds. Prior to the issuance of the alternative writ, $643,000 of the old bonds had been exchanged for a like amount of the refunding bonds, and the old bonds so paid had been returned to the sheriff of Mercer County and had been cancelled. The old bonds outstanding amounted to $172,000; a like amount of refunding bonds is yet with the National City Bank, and presumably at the disposition of the county court.

Respondent admits that it should have first used the sinking fund to reduce the amount of the old bonds before taking steps to refund the remainder, and being so advised, (having theretofore acted in good faith and without improper motive in issuing refunding bonds to the amount of $800,000), on August 21, 1925, it ordered that the entire sinking fund be applied upon the bonded indebtedness, subject to the mandate of this court. The alternative writ had then been served on respondent. And on August 25, 1925, it entered an order reducing the levy so that there would be derived from taxation an amount to pay the interest on the indebtedness thus reduced by application of the sinking fund, and also to provide a sinking fund to take care of the remainder.

So it will be seen that respondent has in its hands $294,-417.37 to apply on its bonded indebtedness, and there are outstanding old bonds amounting to $172,000, which when paid, as directed by the order of August 21, 1925, will leave the sum of $122,417.37 in the sinking fund. Where shall it be applied? How can the sheriff carry out the order? The refunding bonds have been delivered. They embody a con-

tract for payment at a future date. Into whose hands these refunding bonds have passed does not appear. Allyn & Co. are not parties to this suit and the bonds are not within the jurisdiction of this court. It is practically conceded that in refunding outstanding indebtedness, without authority from the taxpayers a county court cannot create additional indebtedness. Refunding is merely an extension of the old debt, not the creation of a new debt; and if a new debt be thus created, swelling the old debt, it cannot be effective, at least insofar as the additional debt is concerned. Allyn & Co. realizing that questions of serious import may be raised over the payment of bonds covering this excess and the interest thereon, by affidavit agree to repurchase from the owners of the refunding bonds a sufficient number of said bonds to which the balance in the sinking fund may be applied, and to surrender them to the sheriff upon payment of par and accrued interest. Allyn & Co. not being a party to this litigation would not be bound by any order which this court would enter in that regard.

Undoubtedly the balance of the sinking fund should be applied as set out in the original issues of the bonds. Without it being so applied, an additional debt has been contracted without sanction of the voters legally given. Whether the virus of illegality runs through the entire issue of refunding bonds, poisoning the whole issue and rendering it void, or whether it is confined to the excess over the original indebtedness, is a question on which the courts differ. Abbott on Pub. Securities, Sec. 304 et seq. It would be improper in this proceeding to pass upon that question. We do not have proper parties before us; neither Allyn & Co. nor the holders of the new bonds are in court, nor do we have jurisdiction of the bonds. A mandamus to compel the county court to cancel its orders and acts relating to the issuance of these refunding bonds would not necessarily bring about the desired result. The refunding bonds are in the hands of innocent purchasers so far as the pleadings show, and a mandate to cancel the issue may be a vain thing. Mandamus will never issue unless the relator shows a clear legal right to the relief sought.

Authority to direct cancellation of the entire issue of refunding bonds is predicated upon the assumption that the refunding statute of 1925, under which respondent acted, is unconstitutional as being in contravention of section 8 of article 10 of the Constitution which directs that no debt shall be contracted thereunder, "unless all questions connected with the same shall have been first submitted to a vote of the people and have received three-fifths of all the votes cast for and against the same". It is asserted that the act authorizes the creation of a new debt and not the extension of the old, that the terms of payment and extension of time authorized make it in direct conflict with the constitutional provision. Wherefore, the purchasers must take notice of invalidity of the bonds, and beware. In connection with the charge of the unconstitutionality of the act and urged to be taken into consideration in passing upon its unconstitutionality, is the argument that the act destroys the market for sale of original bonds at par; for it is said that no one would purchase bonds running over a long period if he knows that under the refunding act his investment might be terminated at the end of five years or a less period of time, through the activities of some investment concern acting in conjunction with the fiscal issuing body and some local scalper. It is said that the act encourages fraud, sharp practices and dereliction on the part of fiscal bodies, and was conceived in the interest of investment companies and not in the interest of the public; that it provides for action by fiscal bodies secretly and without advertisement of their activities to the public and taxpayers. If the status of the case was such that we could properly pass upon the constitutionality of the statute, it is more than likely that the policy of the lawmaking body, the wisdom of the legislation, and its effect on the bond market or upon the prosperity of the people would have little weight in respect to its validity. Vol. 1, Lewis' Sutherland Statutory Construction, Sec. 25, says: "Statutes cannot be declared invalid on the ground that they are unwise, unjust, unreasonable or immoral, or opposed to public policy, or the spirit of the constitution. Unless a statute violates some

express provision of the constitution, it must be held to be valid''.

But we revert to the main question raised by the alternative writ, namely, the constitutionality of the act. We are asked to compel the county court to cancel all its orders relating to the issuance of the refunding bonds, and to recall the bonds and cancel them, on the ground that they have been issued and sold under an invalid act. To declare the act invalid would ipso facto render invalid the bonds issued under it, which are now in the hands of purchasers not parties and are beyond the jurisdiction of the court. We have neither jurisdiction of the parties most vitally interested, nor do we have jurisdiction of the bonds involved. It seems to be well established by the weight of authority that the holder of a financial obligation of the State or any of its subdivisions is a necessary party to any proceeding in which its invalidity is sought to be established. It saves a multiplicity of suits. The holder is entitled to his day in court before his property can be taken away from him. Thus in *Ramsay* v. *Town of Marble Rock,* 123 Iowa 7, a taxpayer sought to enjoin the town authorities from establishing a waterworks system and from issuing bonds or in any way using its funds for that purpose. Municipal bonds had been issued pursuant to an election by the voters, and the ground for relief relied upon by the taxpayer was that the election was void because not held pursuant to notice, and that the bonds issued were in excess of the constitutional limitation. The bonds had been issued and sold before the suit was instituted. The bond holders were not made parties, and the court declined to pass upon the validity of the bonds in their absence. In *City of Anthony* v. *State,* 49 Kan. 246, it was sought by injunction to prevent the city from levying taxes to pay interest on city bonds and to have the bonds declared void. The bond holders were not parties, and the court refused to consider the questions raised by the complainant's pleading until they were made parties. *Dwyer* v. *Hackworth,* 57 Tex. 245; *Hope* v. *Gainesville,* 72 Ga. 246; and *Graham* v. *Minneapolis,* 40 Minn. 436, are similar cases. Abbott on Public Securities, Sec. 154, says: ''Generally in suits to restrain where the validity of

the bonds is raised and they or some of them have passed into the hands of innocent purchasers, it is necessary to make all persons whose interests may be affected by the decree in the case, parties defendant, and if this is not done, the court will not pass upon the validity of the bonds;'' decisions are cited to support the text. This is the principle on which the courts quite generally hold that the judgment or decree of a court involving the validity of such obligations is not binding on holders thereof who are not parties thereto. *Brooklyn* v. *Insurance Co.,* 99 U. S. 362; *New Orleans* v. *Warner,* 175 U. S. 120; and *Savage* v. *Sternberg,* 19 Wash. 679, 67 Am. St. Repts. 751.

This principle founded upon reason is applicable here, and we will not pass upon the validity of the refunding bonds in the absence of parties whose interests will be most vitally affected.

Undoubtedly the sinking fund should be applied to the indebtedness. It is the plain duty of respondent so to do. It has directed that such be done, confessing that it was in error (inadvertently committed it says) when it issued the refunding bonds without having done so. We do not deem it proper to compel it to do what it has already directed to be done. It has already taken a step which is most likely to be effective in bringing in for cancellation sufficient of the refunding bonds to equal the amount of sinking fund on hand, when it provided a levy sufficient to pay the interest and provide a sinking fund for discharge of the indebtedness less the balance in the sinking fund.

In the present state of the pleadings, the writ will be denied.

*Writ refused.*