# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 22-0027

_____

FILED

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
WEST VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES;
BILL CROUCH, SECRETARY;
AND KANAWHA COUNTY CHILD PROTECTIVE SERVICES DIVISION,
Petitioners,

V.

THE HONORABLE LOUIS H. BLOOM,
JUDGE OF THE CIRCUIT COURT OF KANAWHA COUNTY,
AND JENNIFER R. VICTOR AND JENNIFER N. TAYLOR,
GUARDIANS AD LITEM
FOR THE CIRCUIT COURT OF KANAWHA COUNTY,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____

Submitted: September 13, 2022
Filed: November 17, 2022

Patrick Morrisey, Esq.
Attorney General
Steven R. Compton, Esq.
Deputy Attorney General
Director, Health and Human
Resources Division

Jennifer R. Victor, Esq.
Victor & Victor, LLP
Charleston, West Virginia

Jennifer N. Taylor, Esq.
Charleston, West Virginia

**Charleston, West Virginia**

**Lou Ann S. Cyrus, Esq.**
**Emily L. Lilly, Esq.**
**Shuman McCuskey Slicer PLLC**
**Charleston, West Virginia**
**Attorneys for the Petitioners**

**Attorneys for the Respondents,**
**Guardians ad Litem**

**JUSTICE BUNN delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "'Mandamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, but it is never employed to prescribe in what manner they shall act, or to correct errors they have made.' Syl. pt. 1, *State ex rel. Buxton v. O'Brien*, 97 W. Va. 343,

125 S.E. 154 (1924).” Syllabus point 2, *State ex rel. Lambert v. Cortellessi*, 182 W. Va. 142, 386 S.E.2d 640 (1989).

3.      “‘Mandamus will not issue to compel a party to perform an act which he has already begun to do, and it is apparent that he will in good faith perform.’ Point 2, syllabus, *State ex rel. Hall v. County Court of Mercer County*, 100 W. Va. 11[, 129 S.E. 712 (1925)].” Syllabus point 1, *State ex rel. Nelson v. Ritchie*, 154 W. Va. 644, 177 S.E.2d 791 (1970).

4.      “Stipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed.” Syllabus point 1, *Butler v. Smith's Transfer Corp.*, 147 W. Va. 402, 128 S.E.2d 32 (1962).

5.      “A circuit court is afforded wide discretion in determining whether or not a party should be relieved of a stipulation, and such decision should not be set aside absent an abuse of discretion.” Syllabus point 6, *West Virginia Department of Transportation v. Veach*, 239 W. Va. 1, 799 S.E.2d 78 (2017).

**BUNN, Justice:**

Petitioners, the West Virginia Department of Health and Human Resources; its Secretary, Bill Crouch; and Kanawha County Child Protective Services Division (collectively, "DHHR"), request this Court to issue a writ prohibiting the respondent, the Honorable Louis H. Bloom, Judge of the Circuit Court of Kanawha County, from enforcing various mandamus orders it issued against the DHHR. By "Agreed Order" entered on March 29, 2018, the circuit court established the underlying mandamus proceeding initiated by the additional respondents, Kanawha County Guardians ad Litem Jennifer R. Victor and Jennifer N. Taylor (collectively, "the GALs"), to compel the DHHR to address and remedy the limited issues of employee staffing, retention, and training in the Kanawha County Child Protective Services Division Office ("Kanawha County CPS Office"). Thereafter, the circuit court granted the GALs' request to expand the scope of the initial writ of mandamus and, by orders entered December 16, 2021, January 13, 2022, January 20, 2022, and January 25, 2022,[1] added issues, over the DHHR's objections, pertaining to the staffing of Child Protective Services offices, adoption units, and foster care units statewide and imposed limitations on the housing of children in DHHR custody at its offices and in hotels.

---

[1]The circuit court's January 25, 2022 order amended its January 13, 2022 order.

For the reasons set forth below, we find that the DHHR is entitled to a writ of prohibition in this case. The parties agree that the DHHR undertook significant efforts to correct the staffing issues in the Kanawha County CPS Office after the initiation of the 2018 mandamus proceeding and it continues to work towards improving these conditions. Consequently, the DHHR has performed, and continues to perform, the nondiscretionary duty the GALs originally sought to compel. Additionally, the circuit court erred by expanding the scope of the mandamus proceeding to include statewide staffing issues and child housing concerns. The parties originally agreed to the scope of the mandamus proceeding; the circuit court ratified that agreement by order entered March 29, 2018; and the circuit court exceeded the scope of that agreed order in its December 2021 and January 2022 orders.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This case began in 2017 when one of the GALs, Ms. Victor, filed a "Petition for Contempt" in an abuse and neglect case, in which she served as the children's guardian ad litem, alleging that

> [t]he DHHR should be held in contempt for its persistent failure to: (1) manage its child abuse and neglect cases as required by this [c]ourt and the relevant rules and code provisions; (2) file reports and permanency plans in a timely fashion; (3) submit discovery in a timely fashion; and (4) achieve permanency in a timely fashion for the children in its custody in child abuse and neglect cases.

2

Ms. Victor claimed that the DHHR's delays in submitting documentation hampered her ability to adequately prepare for hearings in several abuse and neglect cases in which she served as guardian ad litem, and similarly adversely affected counsel for the respondent parents in that action. Finally, Ms. Victor opined that "[i]nadequate staffing levels, high turnover, heavy caseloads, state budget delays, drastic increases in the number of referrals and petitions, and the opioid abuse epidemic have wreaked havoc upon the limited resources of the DHHR," and "[i]t appears that a lot of the problems identified . . . could be ameliorated by hiring and maintaining an adequate workforce for Kanawha County Child Protective Services ('CPS')." In support of this statement, Ms. Victor averred that, at the time of her contempt petition, and "[u]pon information and belief, there are more than twenty vacancies in the Kanawha County office."

In June 2017, the circuit court issued a "Rule to Show Cause Order"; then the DHHR filed responsive pleadings; and the GALs filed an amended contempt petition.[2] During a December 2017 review hearing, the parties agreed to transfer the contempt motion in the abuse and neglect proceeding to a separate mandamus action before the circuit court. The parties' agreement was memorialized by a "Stipulation Agreement," which the circuit court approved and incorporated into an "Agreed Order," both of which were entered and filed on March 29, 2018. Despite agreement as to many issues as reflected in the "Agreed

---

[2]During the course of the underlying proceedings, the circuit court appointed Ms. Taylor as a guardian ad litem to assist Ms. Victor in pursuing this relief against the DHHR.

Order" and the "Stipulation Agreement," the GALs and the DHHR could not reach an agreement as to the specific scope of the mandamus proceeding. The circuit court decided this issue, noting that "[t]he [c]ourt ruled upon the one unresolved issue, namely, that the agreement would apply only to the DHHR's Kanawha County Division of Child Protective Services, and would not apply statewide." The parties' stipulation, which was signed after this hearing and the circuit court's announcement of the limitation of the scope of the mandamus action, identifies specific shortcomings in the Kanawha County CPS Office and suggested proposals to remedy those issues.[3]

On April 25, 2018, the GALs filed a "Petition for Writ of Mandamus," limiting the scope of the proceeding to issues concerning staffing the Kanawha County CPS Office, and specifying, in pertinent part that

> The Petitioners maintained that the Department failed to fully staff, train and operate the Kanawha County Child Protective Services Division, as required by applicable state and federal laws, rules and regulations, and all internal policies and procedures of the Department. The KC CPS Division failed to meet timelines and deadlines established by statute, rule, regulation, policy or procedure, and the children charged to the care and custody of the Department in abuse and neglect proceedings ultimately suffered from delayed proceedings, multiple placements and lack of permanency.
>
> As a result of various hearings and meetings, the Petitioners and the Department entered into a stipulation and agreement in which the Department acknowledged that the KC CPS office was not fully or effectively staffed, resulting in the

---

[3]The parties' "Stipulation Agreement" will be discussed in greater detail, *infra*.

failures noted by the Petitioners and negatively affecting the children charged to the care of the Department.

Over the next two years, the circuit court held periodic review hearings in accordance with an agreed-upon schedule set forth in the parties' "Stipulation Agreement." During these review hearings, the circuit court frequently commended the DHHR for the efforts it had undertaken to remedy the Kanawha County CPS Office staffing issues. The DHHR periodically moved to dismiss the ongoing mandamus proceedings claiming that it had remedied the conditions that had led to the petition's filing. In January 2020, the GALs moved to amend their petition for writ of mandamus to expand the scope of the staffing issue from Kanawha County, as previously determined by the circuit court and agreed to by the parties, to the staffing of DHHR offices for Child Protective Services statewide, and also to include the additional issues of the staffing of adoption and foster care units.

By order entered December 16, 2021, the circuit court granted the GALs' motion to amend the mandamus proceeding on both bases, ruling as follows:

> After the parties presented evidence at the September 29, 2021, evidentiary hearing, the Petitioners orally renewed their motion for leave to file an Amended Petition for Writ of Mandamus, to broaden their claims to apply to CPS offices statewide, and to encompass the adoption and foster care units within the Department. The [c]ourt heard the arguments of Petitioners in favor of broadening the focus of this mandamus action and of Respondents' counsel's opposition to same.

> The evidence presented by the Petitioners established that, while the Department has made significant efforts since

5

the filing of the original pleadings in this matter, many unresolved issues remain in the Child Protective [S]ervices offices, not only in Kanawha County, but throughout the State of West Virginia.

. . . .

The evidence presented by Petitioners is sufficient to establish a basis for permitting Petitioners to amend their Petition for Writ of Mandamus to encompass the adoption and foster care units of the Department and to broaden the focus of this action to include the entire state of West Virginia. Accordingly, the Petitioners' Motion for Leave to file the Amended Writ of Mandamus should be granted.

. . . .

The Petitioners' Motion for Leave to file their Amended Writ of Mandamus against the West Virginia Department of Health and Human Resources and others shall be, and it is hereby, **GRANTED**.

. . . .

The Petitioners' Amended Petition for Writ of Mandamus shall include all West Virginia Department of Health and Human Resources Child Protective Service staffing issues statewide.

The Petitioners' Amended Petition for Writ of Mandamus shall also include the issues involving the adoption and foster care units within the Bureau for Social Services, permanency placements for children in the care of the Department, and other abuse and neglect proceeding issues raised by the Petitioners.

(Emphasis in original).

Following the September 2021 hearing referenced by the circuit court, but before this order was entered, the GALs raised additional concerns regarding the DHHR's

6

housing of children in its offices and in hotels pending placement. Housing children in this manner was not at issue in the original abuse and neglect case that prompted the GALs to file contempt and mandamus proceedings, but the housing issue later arose in a different abuse and neglect case in November 2021. After holding emergency proceedings on these new allegations, the circuit court, by order entered January 13, 2022, again expanded the scope of the mandamus proceeding to include issues regarding the DHHR's housing of children in its custody:

> On November 17, 2021, the [c]ourt held a placement review hearing in [another abuse and neglect case]. During the hearing, the [c]ourt became aware that the West Virginia Department of Health and Human Resources ("DHHR") has a practice of housing children who are in DHHR custody in Child Protective Services ("CPS") offices throughout the State of West Virginia. The [c]ourt found such placement in DHHR offices to be inappropriate and harmful to such children's best interests. On November 19, 2021, the [c]ourt entered an Order reflecting its findings from the November 17, 2021, hearing. The [c]ourt ordered, in relevant part, "[t]he DHHR shall not house any child who is in its care, temporarily or permanently, at any local DHHR office." The [c]ourt restated its finding that the "placement lacks the necessary sleeping, hygiene, and educational facilities for any child's care, and poses a safety hazard for both children and DHHR personnel." The November 19, 2021, Order was mailed directly to the West Virginia Department of Health and Human Resources, Child Protective Services Division.

> On November 30, 2021, the instant Petitioners, Jennifer R. Victor and Jennifer N. Taylor, filed a Motion for Emergency Hearing in the instant mandamus action. The Petitioners sought a hearing on the issue of children being housed in CPS offices. The Respondents filed a Response in Opposition to Petitioners' Motion for Emergency Hearing, arguing that the issue of children being housed in CPS offices falls outside the scope of the instant mandamus action. The [c]ourt **FINDS** the issue of children being housed in CPS offices to be within the scope of

7

the instant mandamus action, as this action encompasses several varying issues regarding the statewide treatment and placement of children in DHHR custody.

> . . . .

> During the hearing, the [c]ourt heard a great deal of testimony regarding the care children receive while housed in CPS offices. . . .

> [T]he [c]ourt **ORDERS** that no child in DHHR custody be housed in a CPS office for any measure of time. The [c]ourt **ORDERS** that this prohibition be applied to all children in DHHR custody throughout the State of West Virginia.

> Also presented during the hearing was the DHHR's practice of housing children in hotels or motels for extended periods of time. Many of the same concerns and problems are present when children are housed in hotels. . . . While not as severely lacking as a CPS office, a hotel is clearly inadequate long-term housing for a child. The [c]ourt thus **ORDERS** that the DHHR be prohibited from housing a child in a hotel or motel for a period exceeding two nights. The [c]ourt **ORDERS** that this prohibition be applied to all children in DHHR custody throughout the State of West Virginia.

(Footnote omitted; emphasis in original). The DHHR seeks relief in prohibition from this Court to prevent the enforcement of the circuit court's orders continuing the initial mandamus proceeding and expanding its scope.

## II.

## STANDARD FOR ISSUANCE OF WRIT

The sole issue in this case is whether the DHHR is entitled to a writ of prohibition to prevent the circuit court from enforcing its orders granting[4] mandamus relief to the GALs.

> "'Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953)." Syl. Pt. 2, *Cowie v. Roberts*, 173 W. Va. 64, 312 S.E.2d 35 (1984).

Syl. pt. 1, *State ex rel. Miller v. Reed*, 203 W. Va. 673, 510 S.E.2d 507 (1998). *Accord* W. Va. Code § 53-1-1 ("The writ of prohibition shall lie as a matter of right in all cases of

---

[4]The appendix record and its supplements do not contain an order specifically granting the GALs relief in mandamus in accordance with the circuit court's "Agreed Order," the parties' "Stipulation Agreement," and the GALs' "Petition for Writ of Mandamus." However, both the parties and the circuit court have proceeded as if the circuit court granted mandamus relief to the GALs, and the circuit court issued a "Rule to Show Cause" on May 11, 2018, finding that the elements for the issuance of a writ of mandamus to compel the DHHR to remedy the Kanawha County CPS Office staffing issues had been satisfied. In this order, the circuit court specifically found that

> The verified Petition for Writ of Mandamus contains sufficient averments to state a prima facie case to issue a writ of mandamus against the Respondents. The Writ contains detailed averments that demonstrate that the Respondents, individually or jointly, failed to fully staff, train and operate the Kanawha County Child Protective Services Division, as required by applicable state and federal laws, rules and regulations, and all internal policies and procedures of the Department; failed to meet timelines and deadlines established by statutes, rules, regulations, policies or procedures; and that the children charged to the care and custody of the Department in abuse and neglect proceedings ultimately suffered from delayed proceedings, multiple placements and lack of permanency.

usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.").

Whether a writ of prohibition should issue in a particular case is governed by the following standard:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). We now consider the DHHR's request for prohibitory relief under this standard.

# III.

# DISCUSSION

10

The DHHR's argument that it is entitled to prohibition relief can be distilled into two main points. First, the DHHR contends that the circuit court erred by continuing the original, agreed-to mandamus action after it had taken steps to correct the employee staffing matters in its Kanawha County CPS Office. The DHHR argues that mandamus is not appropriate where, as here, a state actor has taken measures to remediate the complained of inaction. Second, the DHHR takes issue with the expansion of the original, agreed-to mandamus action to add statewide CPS staffing issues, including in the adoption and foster care units, and to impose limitations on the DHHR's housing of children in its custody. The parties initially agreed that the mandamus proceeding would address only the CPS staffing issues in the Kanawha County CPS Office so the expansion of the mandamus action exceeded the scope of the parties' "Stipulation Agreement" and the circuit court's "Agreed Order." The GALs dispute that the DHHR has sufficiently addressed the Kanawha County staffing issues that it was initially tasked with remedying or that the circuit court erred by expanding the scope of the mandamus proceeding to encompass additional staffing and child housing issues.

"The . . . challenges presented in this case are before this Court as petitions for writs of prohibition [in this Court] and mandamus [in the circuit court]. These extraordinary forms of relief are designed to remedy miscarriages of justice and have consistently been used sparingly and under limited circumstances." *State ex rel. Cooper v. Tennant*, 229 W. Va. 585, 593, 730 S.E.2d 368, 376 (2012). Although the DHHR's request

for a writ of prohibition seeks extraordinary relief that should be sparingly granted, we find that the DHHR has established its entitlement to such a writ in this case.

### A. Original Mandamus Proceeding

The parameters of the original mandamus proceeding were established by the circuit court's "Agreed Order," entered March 29, 2018, which also incorporated the parties' "Stipulation Agreement," filed March 29, 2018, and the GALs' "Petition for Writ of Mandamus," filed April 25, 2018. Each of these documents specifically limited the mandamus proceeding to the staffing issues of the Kanawha County CPS Office, rather than the more expansive, statewide scope advocated by the GALs. In its order, the circuit court specifically outlined this limitation that "the [parties'] agreement [to file a separate mandamus action in lieu of proceeding in contempt in the underlying abuse and neglect case] would *apply only to the DHHR's Kanawha County Division of Child Protective Services, and would not apply statewide*." (Emphasis added).

Consistent with this memorialization of their agreement, the parties' "Stipulation Agreement" explained the scope of the relief sought in the mandamus proceeding, in pertinent part, as follows:

> Jennifer R. Victor and Jennifer N. Taylor, *Co-Guardians ad Litem*, and the West Virginia Department of Health and Human Resources, by and through its Secretary, Bill Crouch, do hereby stipulate and agree as follows:
>
> 1. The West Virginia Department of Health and Human Resources ("the Department") acknowledges that there

is an ongoing systemic problem at the Department with maintaining adequate staffing, retention and training of Child Protective Services ("CPS") employees in its Kanawha County office, as reflected by the 2016 Legislative Audit, the allegations in the petition and amended petition filed by the *Co-Guardians ad Litem*, the testimony of witnesses obtained at the hearings in this matter and the exhibits tendered by both parties.

2. The *Co-Guardians ad Litem* acknowledge that the Department has identified numerous creative solutions that address the staffing and training problems at the Kanawha County Child Protective Services offices, some of which have been implemented, some of which have been proposed and some of which are pending.

3. The Department shall strive to staff the Kanawha County CPS offices at 95% capacity by December 18, 2018. The failure of the Department to reach its goal shall not automatically result in the Department being in contempt of court, but shall require a closer examination of the solutions being implemented by the Department. When the staffing level at the Kanawha County CPS office falls to 80% capacity or less, the Department shall take immediate action to recruit new employees through postings, job fairs, transfers or other methods identified and used by the Department.

4. The Department agrees that in developing corrective solutions to the training issues and problems identified in this action, the Department will specifically focus on correcting the recurrent and continuing issue of CPS employees failing to have backup or substitute case workers who have a working knowledge of a case when the assigned caseworker is ill or on vacation and cannot appear in court.

5. The Department agrees to include in its training sessions for new CPS caseworkers in Kanawha County outreach sessions with judges, prosecutors, *guardians ad litem* and defense counsel so as to promote an understanding of the responsibilities of each of the

13

stakeholders and improve the working relationship with CPS caseworkers.

6. The Department shall specifically focus on updating its standard operating procedures, tickler system, employee manuals, flow charts and other training documents or programs to emphasize that CPS caseworkers must provide all court summaries, placement plans, discovery and other such reports to the *Co-Guardians ad Litem*, counsel of record and appointed CASA workers, as required by the *Rules of Procedure for Child Abuse and Neglect Cases*.

7. The parties stipulate and agree that it is in the best interests of all children who are served by the Department and CPS that this action continue as a separate mandamus action, subject to the jurisdiction and venue of the Circuit Court of Kanawha County, West Virginia, and specifically subject to the jurisdiction of the Honorable Louis H. Bloom.

8. This action shall be transferred to a separate mandamus action and shall remain within the jurisdiction of the Honorable Louis H. Bloom for approximately one (1) year from and after December 18, 2017, or until dismissed by the [c]ourt, whichever last occurs. All pleadings, orders and exhibits pertaining to the contempt portion of the proceedings styled *In the Interests of B.W. and G.W.* shall be transferred to the mandamus action, together with the transcripts of all hearings conducted in response to the original contempt motion or amended motion.

9. The Department agrees to submit to the [c]ourt and to the *Co-Guardians ad Litem* monthly reports reflecting the status of CPS employees in Kanawha County, including, but not limited to, the number of positions available, the number of positions filled, the number of vacancies, the number of trainees and the number of employees who have left the employ of the Department.

10. The Department and the *Co-Guardians ad Litem* shall appear at quarterly review hearings to review the progress made by the Department in correcting the problems and issues raised by the *Co-Guardians ad Litem*. The Department shall submit to the [c]ourt a quarterly report that describes the status of the employees at the Kanawha County CPS office, the efforts the Department has made regarding filling the vacancies at CPS, the success of the job fairs, training sessions and other programs implemented by the Department; the methods used to safeguard against the issues and problems noted in the original and amended petitions; and such other information required by the [c]ourt.

11. The Department shall appear at the review hearings through Cabinet Secretary Bill Crouch or through the Commissioner for the Bureau for Children and Families, Linda Watts, or both if so desired[.]

Both the GALs and Secretary Crouch signed this "Stipulation Agreement."

Finally, the GALs' "Petition for Writ of Mandamus" also confined the proceeding to ameliorating the staffing issues identified in the Kanawha County CPS Office and alleged that:

> [T]he Department failed to fully staff, train and operate the Kanawha County Child Protective Services Division, as required by applicable state and federal laws, rules and regulations, and all internal policies and procedures of the Department. The KC CPS Division failed to meet timelines and deadlines established by statute, rule, regulation, policy or procedure, and the children charged to the care and custody of the Department in abuse and neglect proceedings ultimately suffered from delayed proceedings, multiple placements and lack of permanency.

The question posed by the DHHR to this Court is, then, has the DHHR sufficiently addressed the staffing issues that were identified at the outset of the mandamus proceeding, by the parties and the circuit court, such that the GALs are no longer entitled to mandamus relief.

We begin with a review of the standard for issuing a writ of mandamus. The parties do not dispute that "[m]andamus is a proper proceeding by which to compel a public officer to perform a mandatory, nondiscretionary legal duty[,]"[5] and, indeed agreed that relief in mandamus was appropriate to compel the DHHR to address the Kanawha County CPS Office staffing issues. At the time of the original petition, the parties agreed that the criteria for the issuance of a writ of mandamus had been satisfied:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969).[6]

---

[5] Syl. pt. 3, *Delardas v. Cnty. Ct. of Monongalia Cnty.*, 155 W. Va. 776, 186 S.E.2d 847 (1972).

[6] *Accord* Syl. pt. 4, *State ex rel. Withers v. Bd. of Educ. of Mason Cnty.*, 153 W. Va. 867, 172 S.E.2d 796 (1970) ("'To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.' Point 4 Syllabus, *State ex rel. Zagula v. Grossi*, 149 W. Va. 11[, 138 S.E.2d 356 (1964)].").

However, we also have recognized some limits to the availability of mandamus relief.

> "Mandamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, but it is never employed to prescribe in what manner they shall act, or to correct errors they have made." Syl. pt. 1, *State ex rel. Buxton v. O'Brien*, 97 W. Va. 343, 125 S.E. 154 (1924).

Syl. pt. 2, *State ex rel. Lambert v. Cortellessi*, 182 W. Va. 142, 386 S.E.2d 640 (1989).

Likewise,

> "[m]andamus will not issue to compel a party to perform an act which he has already begun to do, and it is apparent that he will in good faith perform." Point 2, syllabus, *State ex rel. Hall v. County Court of Mercer County*, 100 W. Va. 11[, 129 S.E. 712 (1925)].

Syl. pt. 1, *State ex rel. Nelson v. Ritchie*, 154 W. Va. 644, 177 S.E.2d 791 (1970). "A writ of mandamus [also] will not be issued to compel the performance of an act which the defendant has not refused to perform." *Id.* at 651, 177 S.E.2d at 795 (citations omitted).

And while

> [t]he purpose of mandamus is to compel one to perform a legal duty imposed by law, . . . such duty must be one which he is capable of performing. Mandamus will not be granted where compliance with the mandate of the writ is impossible. . . . Impossibility of performance means that which cannot be done. . . . On the other hand, the writ will not be denied merely because of difficulty of performance of the duties prescribed by statute.

*State ex rel. Bd. of Educ. of Kanawha Cnty. v. Johnson*, 156 W. Va. 39, 43, 190 S.E.2d 483, 486 (1972) (citations omitted).

Applying these principles to the case before us, we find that the DHHR has fulfilled its mandatory duty to address the staffing issues in the Kanawha County CPS Office. In fact, the circuit court has repeatedly acknowledged the DHHR's progress in this regard. For example, in its order entered December 19, 2018, regarding the September 5, 2018 review hearing,[7] the circuit court recounted the following efforts the DHHR had made to address and remedy the Kanawha County CPS Office's staffing issues:

1. Kanawha County Child Protective Services ("CPS") increased its staffing levels to 52 CPS workers for the 61 positions available, leaving only 9 vacancies.

2. The training regimen was streamlined to require nine weeks instead of three months.

3. Kanawha County CPS hired four support workers to assist licensed CPS workers.

4. Numerous job fairs were scheduled to develop new hires, including additional outreach to West Virginia colleges and universities.

5. Kanawha County CPS developed a tracking system which showed that CPS workers were missing fewer hearings and submitting their reports in a timelier fashion.

6. Associate General Counsel assigned to the Bureau for Children and Families Cammie Chapman was working with staff to improve their [c]ourt reports.

7. The DHHR implemented pay raises, including an across-the-board pay increase of $2160; a two percent increase for CPS trainees, workers, and supervisors; and several retention initiatives. The retention initiatives included a five percent pay increase after two years of employment, a five percent pay increase after five years of employment,

---

[7] This hearing was held approximately six months after the circuit court's entry of its "Agreed Order" and the parties' filing of their "Stipulation Agreement."

and a $1500 hiring incentive for new employees who stayed for a year.

8. The DHHR developed and implemented use of a checklist to help CPS workers prepare for hearings throughout the entire timeline of a CPS case. A copy of the checklist was admitted into evidence as Exhibit One.

9. The DHHR was developing an initiative to recruit CPS workers earlier in their college careers by providing opportunities to participate in career fairs and internships.

10. The DHHR and the co-guardians ad litem participated in two productive meetings to develop recruitment and retention strategies on July 11, 2018, and August 4, 2018. The Division of Personnel also participated in the meeting held August 4, 2018.

11. Commissioner Watts was reviewing options to finalize cases more quickly to reduce the workload of DHHR personnel.

The court additionally commented that, "[on] the basis of the evidence and arguments presented, the [c]ourt noted that a lot of progress had been made in hiring individuals to fill the vacancies in the Kanawha County CPS Division."

The circuit court again lauded the DHHR's efforts to correcting the Kanawha County CPS Office staffing issues in its orders entered May 8, 2019;[8] December 4, 2019;[9] and May 26, 2020.[10]

---

[8]The circuit court's May 8, 2019 order pertained to the December 19, 2018 review hearing and noted the actions undertaken by the DHHR included actions to improve recruitment, retention, and management; increasing its annual budget; implementing pay raises; and continuing to address personnel issues and performance in the Kanawha County CPS Office, as well as related matters stemming from the "opioid-epidemic" and its demands on the DHHR's resources.

[9]In its December 4, 2019 order for the April 12, 2019 review hearing, the circuit court recounted these undertakings by the DHHR: implementation of salary initiatives and pay increases; efforts to improve employee job satisfaction; utilization of crisis teams to fully staff the Kanawha County CPS Office; development of training programs concerning court proceedings; hiring a national consultant to assist in the DHHR's achievement of its personnel training goals.

[10]The circuit court further detailed the DHHR's progress in its January 29, 2020 review hearing order entered May 26, 2020, and observed that the DHHR efforts include "conducting exit interviews to help identify the reasons employees choose to leave"; giving CPS employees a raise above the raise given to all state employees; requesting legislation to increase the number of CPS positions statewide; and expediting travel reimbursement for CPS workers.

In addition to reiterating the DHHR's efforts, the circuit court also specifically recognized, in its May 8, 2019 order, that "Secretary Crouch and Commissioner Watts shall be commended for the progress made by the DHHR in this matter." The circuit court, in its December 16, 2021 order, more extensively applauded the DHHR's efforts:

> The [c]ourt specifically finds that the evidence presented by the parties established that the Department, Secretary Crouch, and Commissioner Pack[11] are committed to addressing the challenges presented by West Virginia Department of Health and Human Resources staffing issues. The evidence further established that the Department has made good faith efforts to address the issues affecting the children of this State as raised in the mandamus action. The Department has promoted legislation that allowed for staff raises and special appointment incentives; increased its efforts to recruit and train staff; created significant opportunities for career advancement for its caseworkers; responded to recommendations from the Legislative Auditor and the Foster Care Ombudsman; and contracted for outside studies, all with the goal of improving the services provided through the Child Protective Services offices throughout the state.

(Footnote added).

While we recognize that the DHHR's amelioration of the Kanawha County CPS Office's staffing issues has not completely eradicated the problems identified, progress towards that end is required by our mandamus standards, but perfection is not. *See generally* Syl. pt. 1, *Nelson*, 154 W. Va. 644, 177 S.E.2d 791. And, throughout the underlying mandamus proceedings, as repeatedly acknowledged in the circuit court's

---

[11]Former Commissioner Watts retired in 2021.

21

orders, the DHHR has demonstrated consistent, concerted efforts to remedy the Kanawha County CPS Office's staffing issues. Furthermore, while we hesitate to declare the DHHR's achievement of its percentage staffing goals to be impossible, it appears that, despite numerous pay raises, salary incentives, trainings, job fairs, and the like, the DHHR has been unable to maintain staffing numbers to meet the percentages it agreed to strive to achieve in the parties' "Stipulation Agreement." Therefore, upon these particular facts, we find that the DHHR has addressed the Kanawha County staffing issues that led to the circuit court's entry of its "Agreed Order" and the granting of the original writ of mandamus, and the record reveals that the DHHR continues to make progress towards the achievement of its staffing goals such that a writ of mandamus no longer is necessary to compel the DHHR to perform its mandatory duties. Thus, the circuit court clearly erred when it refused to grant the DHHR relief from the original mandamus action after its good faith efforts to fix the Kanawha County staffing issues became apparent. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. The DHHR is entitled to a writ of prohibition to prevent the circuit court from continuing to enforce the original writ of mandamus concerning staffing issues in the Kanawha County CPS Office.

### B. *Expansion of Original Mandamus Proceeding*

Upon the institution of the original mandamus proceeding in the circuit court in 2018, the parties, assisted by the circuit court, defined the parameters of the proceeding to apply only to the staffing issues in the Kanawha County CPS Office. As explained above, the DHHR has been working towards remedying those conditions during the pendency of

22

the case, and the circuit court has acknowledged its progress. Nevertheless, more recently, the GALs identified certain other issues they would like the DHHR to remediate, and the circuit court approved the expansion of the scope of the original mandamus proceeding to include issues pertaining to statewide staffing in CPS offices, as well as in the adoption and foster care units, and the housing of children in DHHR custody in its offices and hotels. Specifically, in its December 16, 2021 order, the circuit court declared that

> [t]he evidence presented by Petitioners is sufficient to establish a basis for permitting Petitioners to amend their Petition for Writ of Mandamus to encompass the adoption and foster care units of the Department and to broaden the focus of this action to include the entire state of West Virginia. Accordingly, the Petitioners' Motion for Leave to file the Amended Writ of Mandamus should be granted.

Similarly, in its January 13, 2022 order,[12] the circuit court announced further that "[t]he [c]ourt **FINDS** the issue of children being housed in CPS offices to be within the scope of

---

[12]While the circuit court entered two other orders amending both the GALs' writ of mandamus (January 20, 2022) and its prior order from the January 6, 2022 hearing (January 25, 2022), we find that the circuit court lacked the authority to do so because this Court had stayed the circuit court mandamus proceedings *before* the circuit court entered those orders. On January 19, 2022, we granted the DHHR's motion for a stay of the underlying mandamus proceedings pending in the circuit court, ruling that, "[u]pon consideration of the motions, the Court is of the opinion to and does grant the motion for stay of circuit court proceedings. It is **ORDERED** that all proceedings in Kanawha County Circuit Court Civil Action No. 18-P-142 are stayed pending resolution of the petition for writ of prohibition." (Emphasis in original).

This Court has the authority to grant a stay of proceedings in a circuit court when, as here, a party requests this Court to issue a writ of prohibition to restrain the circuit court from acting further in a given matter. *See* W. Va. R. App. P. 16(j) ("If the Supreme Court determines to issue a rule to show cause, the Clerk shall so notify the parties. Unless otherwise provided, *the issuance of a rule to show cause in prohibition stays all further proceedings in the underlying action for which an award of a writ of prohibition is sought.*" (emphasis added)). When this Court grants a stay of proceedings, the circuit court no longer

23

the instant mandamus action, as this action encompasses several varying issues regarding the statewide treatment and placement of children in DHHR custody." (Emphasis in original). And, as a corollary to this ruling, the circuit court also determined that its inclusion of housing issues within the mandamus proceeding further prescribed the location of facilities and duration of time at those facilities it deemed acceptable for accommodating children in the DHHR's custody:

> [T]he [c]ourt **ORDERS** that no child in DHHR custody be housed in a CPS office for any measure of time. The [c]ourt **ORDERS** that this prohibition be applied to all children in DHHR custody throughout the State of West Virginia.
>
> . . . .
>
> The [c]ourt . . . **ORDERS** that the DHHR be prohibited from housing a child in a hotel or motel for a period exceeding two nights. The [c]ourt **ORDERS** that this prohibition be applied to all children in DHHR custody throughout the State of West Virginia.

has the authority to preside over the matter unless it receives permission to proceed from this Court. *See* Syl. pt. 3, *Fenton v. Miller*, 182 W. Va. 731, 391 S.E.2d 744 (1990) ("Once this Court takes jurisdiction of a matter pending before a circuit court, the circuit court is without jurisdiction to enter further orders in the matter except by specific leave of this Court."). A stay operates as "'[a] suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point. . . .' *Black's Law Dictionary* 1267 (5th ed. 1979)." *State ex rel. Dye v. Bordenkircher*, 168 W. Va. 374, 378, 284 S.E.2d 863, 866 (1981).

"In this case, we took jurisdiction of the matter pending[,] and the circuit court had no jurisdiction to enter any further orders absent specific leave of this Court or ancillary jurisdiction." *Hanson v. Bd. of Educ. of the Cnty. of Mineral*, 198 W. Va. 6, 9, 479 S.E.2d 305, 308 (1996). Here, the circuit court neither asked this Court's permission to enter the referenced orders to memorialize its prior oral rulings nor did we grant such permission. Therefore, we will not consider either the January 20, 2022 or the January 25, 2022 orders entered by the circuit court in the underlying mandamus proceeding because the circuit court entered both orders after our stay of those proceedings when the circuit court lacked such authority.

24

(Emphasis in original).

Before this Court, the DHHR seeks relief in prohibition from the circuit court's expansion of the original mandamus proceeding. The original mandamus proceeding began when the circuit court narrowly defined the scope of the mandamus in its "Agreed Order" and the parties agreed to adopt that limitation in their "Stipulation Agreement." The parties' stipulation and agreement as to the scope of the action are at the center of this issue.

> A stipulation is an agreement . . . made by the parties in a legal action with regard to a matter related to the case . . . . In essence, a stipulation is a contract, or at least akin to one, and is entitled to all the sanctity of a conventional contract. It creates a new, superseding liability that is substituted for the original one, and is not merely a unilateral description of one side's position.

> [Additionally,] [a] stipulation is a statement . . . that both parties agree [is] true. Thus, a trial judge does not accept or deny one party's offer to stipulate; rather, a stipulation must be reached between the parties . . . . The essence of a stipulation is an agreement between the parties . . . with respect to business before a court. A court may adopt and incorporate a proposed stipulation into a court order.

83 C.J.S. *Stipulations* § 1 (2022) (internal quotations, citations, and footnotes omitted).

"Trial courts look favorably upon stipulations the effect of which is generally to simplify litigation. For this reason they are . . . looked upon in order to carry out their actual purpose." *Gilkerson v. Baltimore & Ohio R.R. Co.*, 132 W. Va. 133, 140, 51 S.E.2d 767, 770 (1948). Stipulations are so favored in the law that the West Virginia Trial Court

25

Rules specifically provide for their entry. *See* W. Va. Trial Ct. R. 23.05 ("Unless otherwise ordered, stipulations must be in writing, signed by the parties making them or their counsel, and promptly filed with the clerk."). Thus, "[s]tipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed." Syl. pt. 1, *Butler v. Smith's Transfer Corp.*, 147 W. Va. 402, 128 S.E.2d 32 (1962). *Accord* Syl. pt. 2, in part, *McCoy v. McCoy*, 74 W. Va. 64, 81 S.E. 562 (1914) ("[A]greements made in open court by the parties to the cause and acted upon by the court are binding and a decree founded therein will not be reversed."). *But see* Syl. pt. 9, *Wade v. McDougle*, 59 W. Va. 113, 52 S.E. 1026 (1906) ("A person is not bound by an admission in an offer to compromise not accepted by the other party."). "Because stipulations fairly entered into often operate to settle controversies or expedite judicial proceedings, they are favored. They are therefore generally controlling and conclusive . . . ." *Fairmont Tool, Inc. v. Davis*, ___ W. Va. ___, ___, 868 S.E.2d 737, 750 (2021) (citations omitted).

Despite the conclusiveness of a stipulation, a circuit court nevertheless has the discretion to set aside such an agreement should the circumstances so warrant. "A circuit court is afforded wide discretion in determining whether or not a party should be relieved of a stipulation, and such decision should not be set aside absent an abuse of discretion." Syl. pt. 6, *W. Va. Dep't of Transp. v. Veach*, 239 W. Va. 1, 799 S.E.2d 78 (2017). But relief from a stipulation is limited to certain, discrete circumstances since "a stipulation is an enforceable contract, and, like a contract, relief from a stipulation is usually

26

available only in cases of fraud, mistake, improvidence or material change in circumstances, where in equity and good conscience the stipulation ought not to stand."[13] *Fairmont Tool*, ___ W. Va. at ___, 868 S.E.2d at 750 (internal quotations and citations omitted). *See also* Syl., *Cole v. State Comp. Comm'r*, 114 W. Va. 633, 173 S.E. 263 (1934) ("A stipulation of counsel may be set aside, upon the request of one of the parties, on the ground of improvidence provided both parties can be restored to the same condition as when the agreement was made."). Thus, "[t]o be relieved from a stipulation, the party seeking relief must ordinarily act diligently, show good cause and provide fair notice. Generally, relief will only be afforded if enforcement of the stipulation will result in a manifest injustice upon one of the parties." *Veach*, 239 W. Va. at 8, 799 S.E.2d at 85 (citation omitted).

The underlying mandamus proceeding originated from the GALs' "Petition for Contempt" against the DHHR in an abuse and neglect case that sought to hold the DHHR accountable for alleged staffing deficiencies in its Kanawha County CPS Office. However, by the time the parties had agreed to convert the contempt litigation into a new,

---

[13]When a court is tasked with reviewing the terms of a stipulation, ordinary contract principles typically apply. *See generally* Syl. pt. 2, *State ex rel. Scott v. Taylor*, 152 W. Va. 151, 160 S.E.2d 146 (1968) ("The same rules for ascertaining the intent of the parties apply to a stipulation entered into by the plaintiffs and defendants as are applicable to other written instruments and if the language thereof is clear and unambiguous resort cannot be had to the rules of interpretation and construction but effect must be given to the intent of the parties as clearly expressed therein."). *Cf.* Syl. pt. 1, *id.* ("Where the language of a stipulation, entered into by the parties to a civil action seeking damages for personal injury, is clear and unambiguous the Court must apply such language so as to consummate the express intention of the parties.").

independent proceeding in mandamus, the relief sought by the GALs in their "Amended Petition for Contempt" had grown to encompass CPS staffing issues statewide. In their amended request for relief, the GALs alleged that "[t]he DHHR's failures and deficiencies occur throughout the entire state" and "[a]ny corrective action by the DHHR must be addressed throughout the entire state, inasmuch as the DHHR is a state agency."

When the parties could not reach an agreement as to the parameters of the original writ of mandamus, the circuit court, in its "Agreed Order," precisely and narrowly tailored the matter to pertain *only* to the staffing issues in the Kanawha County CPS Office: "the [parties'] agreement [to file a separate mandamus action in lieu of proceeding in contempt in the underlying abuse and neglect case] would *apply only to the DHHR's Kanawha County Division of Child Protective Services, and would not apply statewide.*" (Emphasis added). The parties then memorialized this limitation in their "Stipulation Agreement," and the GALs further acknowledged this restriction in their "Petition for Writ of Mandamus."

Since that time, though, the GALs have persisted in their attempts to expand the scope of the issues to be included within their request for mandamus relief, and the circuit court has repeatedly acquiesced to their demands—despite the fact that the circuit court, itself, first established the limits of the case, and the GALs, as well as the DHHR, agreed to comply with that decision. Moreover, the GALs, in their requests to expand the mandamus' scope, have not asserted that the parties' "Stipulation Agreement" should be

set aside nor has the circuit court determined that the parties should be relieved of their agreement. Absent a challenge to the validity of the parties' "Stipulation Agreement," it must be enforced pursuant to our caselaw holding stipulations to be valid and enforceable agreements. *See* Syl. pt. 1, *Butler*, 147 W. Va. 402, 128 S.E.2d 32; Syl. pt. 2, in part, *McCoy*, 74 W. Va. 64, 81 S.E. 562. Because the parties agreed to limit the scope of the original mandamus proceeding, as reflected in both their "Stipulation Agreement" and the circuit court's "Agreed Order" incorporating this agreement, the scope of the mandamus proceeding was established and could not be altered without invalidating the parties' stipulation. When the circuit court then added numerous other issues to the original mandamus proceeding, it abused its discretion by altering the parties' agreement when neither the GALs nor the DHHR had claimed that justice required their stipulation to be set aside. *See* Syl. pt. 6, *Veach*, 239 W. Va. 1, 799 S.E.2d 78; *id.* at 8, 799 S.E.2d at 85. Because the circuit court clearly erred in modifying the terms of the parties' "Stipulation Agreement," which it had previously approved in its "Agreed Order," and when the parties had not asked to be relieved from their agreement due to allegations of its infirmity, the DHHR is entitled to a writ of prohibition to prevent the circuit court from expanding the scope of the original mandamus proceeding through the inclusion of additional issues not agreed upon by the parties at the time of its inception. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

In closing, we would be remiss if we did not acknowledge our deep concern regarding the GALs' allegations of systemic staffing issues in CPS offices statewide, as

29

well as in the adoption and foster care units, and the delays in the achievement of permanency for children involved in abuse and neglect cases caused by these deficiencies. We are also troubled by the finite housing options the DHHR apparently has at its disposal to accommodate children in emergency situations. However, where the scope of the original mandamus proceeding was rigidly defined by the agreement of the parties, and that agreement was accepted by the circuit court, the addition and consideration of these other issues extraneous to this agreement is not proper within the confines of this case. This Opinion should not be read to suggest that further litigation to address these issues is foreclosed.[14] Based on the foregoing, we direct that Case Number 18-P-142 be dismissed from the docket of the Circuit Court of Kanawha County.

## IV.

## CONCLUSION

As set forth above, the DHHR is entitled to a writ of prohibition in this case to prevent the circuit court from continuing to enforce its March 29, 2018 "Agreed Order" that awarded a writ of mandamus to the GALs because the DHHR has done that which the GALs sought to compel—made good faith efforts to remedy the staffing issues in its Kanawha County CPS Office. The DHHR is also entitled to a writ of prohibition to prevent the circuit court from enforcing its subsequent orders entered in December 2021 and

---

[14]*See Jonathan R. by Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022) (concerning ongoing federal court litigation regarding alleged deficiencies in the West Virginia child welfare system).

January 2022 that expanded the scope of the agreed upon mandamus to include statewide staffing issues in CPS offices, adoption units, and foster care units and imposed limitations on the DHHR's housing of children in its custody.

Writ Granted.